## SUMMONS IN A CIVIL ACTION

| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF PENNSYLVANIA |
|---|---|
| RICHARD LIEBERMAN, as an individual and as trustee of the Richard Lieberman, M.D. APC Defined Benefit Pension Plan,<br><br>Plaintiff,<br><br>vs.<br><br>HAWK MANAGEMENT L.P.;<br>HWC LLC;<br>DAVID S. CALLAN; and<br>RICHARD SCOTT WILLIAMS,<br><br>Defendants. | Docket No.<br>    CIVIL ACTION NO.<br><br>To: (Name and Address of Defendant)<br><br>HAWK MANAGEMENT L.P.<br>159 North State Street<br>Newton, PA  18940 |

| YOU ARE HEREBY SUMMONED and required to serve upon |
|---|
| Plaintiff's Attorney (Name and Address)<br><br>Robert L. Ebby<br>One Logan Square, 27th Floor<br>Philadelphia, PA 19103<br>(215) 568- 6200<br><br>(Attorneys for RICHARD LIEBERMAN, as an individual and as trustee of the Richard Lieberman, M.D. APC Defined Benefit Pension Plan) |

an answer to the complaint which is herewith served upon you, within 21 days after service of this summons upon you (not counting the day you received it). If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

| Clerk | Date |
|---|---|
| (By) Deputy Clerk | |

## RETURN OF SERVICE

| | Date |
|---|---|
| Service of the Summons and Complaint was made by me[1] | |
| Name of Server | Title |

Check one box below to indicate appropriate method of service

    Served personally upon the defendant.  Place where served _____

_____

    Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person with whom the summons and complaint were left: _____

_____

    Other (specify) _____

_____

_____

## STATEMENT OF SERVICE FEES

| Travel | Services | Total |
|---|---|---|
| | | |

## DECLARATION OF SERVER

    I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____          _____
               Date                                          Signature of Server

                                          _____
                                          Address of Server

1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

## SUMMONS IN A CIVIL ACTION

| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF PENNSYLVANIA |
|---|---|
| RICHARD LIEBERMAN, as an individual and as trustee of the Richard Lieberman, M.D. APC Defined Benefit Pension Plan,<br><br>Plaintiff,<br><br>vs.<br><br>HAWK MANAGEMENT L.P.;<br>HWC LLC;<br>DAVID S. CALLAN; and<br>RICHARD SCOTT WILLIAMS,<br><br>Defendants. | Docket No.<br>    CIVIL ACTION NO.<br><br>To:  (Name and Address of Defendant)<br><br>HWC LLC<br>159 North State Street<br>Newton, PA  18940 |

YOU ARE HEREBY SUMMONED and required to serve upon

Plaintiff's Attorney (Name and Address)

Robert L. Ebby
One Logan Square, 27th Floor
Philadelphia, PA 19103
(215) 568- 6200

(Attorneys for RICHARD LIEBERMAN, as an individual and as
trustee of the Richard Lieberman, M.D. APC Defined Benefit Pension Plan)

an answer to the complaint which is herewith served upon you, within 21 days
after service of this summons upon you (not counting the day you received it).
If you fail to do so, judgment by default will be taken against you for the
relief demanded in the complaint.

| Clerk | Date |
|---|---|
| (By) Deputy Clerk | |

## RETURN OF SERVICE

| | Date |
|---|---|
| Service of the Summons and Complaint was made by me[1] | |
| Name of Server | Title |

Check one box below to indicate appropriate method of service

☐ Served personally upon the defendant.  Place where served _____

_____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person with whom the summons and complaint were left:

_____

☐ Other (specify) _____

_____

_____

## STATEMENT OF SERVICE FEES

| Travel | Services | Total |
|---|---|---|
| | | |

## DECLARATION OF SERVER

    I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____     _____
               Date                              Signature of Server

                                               _____
                                               Address of Server

1)  As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

## SUMMONS IN A CIVIL ACTION

| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF PENNSYLVANIA |
|---|---|
| RICHARD LIEBERMAN, as an individual and as trustee of the Richard Lieberman, M.D. APC Defined Benefit Pension Plan,<br><br>                            Plaintiff,<br><br>           vs.<br><br>HAWK MANAGEMENT L.P.;<br>HWC LLC;<br>DAVID S. CALLAN; and<br>RICHARD SCOTT WILLIAMS,<br><br>                            Defendants. | Docket No.<br>          CIVIL ACTION NO.<br><hr>To:  (Name and Address of Defendant)<br><br>DAVID S. CALLAN<br>159 North State Street<br>Newton, PA  18940 |

|  |
|---|
| YOU ARE HEREBY SUMMONED and required to serve upon |

| Plaintiff's Attorney (Name and Address)<br><br>Robert L. Ebby<br>One Logan Square, 27th Floor<br>Philadelphia, PA 19103<br>(215) 568- 6200<br><br>(Attorneys for RICHARD LIEBERMAN, as an individual and as<br>trustee of the Richard Lieberman, M.D. APC Defined Benefit Pension Plan) |
|---|

|  |  |
|---|---|
| an answer to the complaint which is herewith served upon you, within 21 days after service of this summons upon you (not counting the day you received it). If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. | |
| Clerk | Date |
| (By) Deputy Clerk | |

## RETURN OF SERVICE

| | Date |
|---|---|
| Service of the Summons and Complaint was made by me[1] | |
| Name of Server | Title |

Check one box below to indicate appropriate method of service

    Served personally upon the defendant.  Place where served _____

_____

    Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
    Name of person with whom the summons and complaint were left: _____

_____

    Other (specify) _____

_____

_____

## STATEMENT OF SERVICE FEES

| Travel | Services | Total |
|---|---|---|
| | | |

## DECLARATION OF SERVER

    I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____       _____
               Date                   Signature of Server

                                        _____
                                          Address of Server

1)  As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

**SUMMONS IN A CIVIL ACTION**

| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF PENNSYLVANIA |
|---|---|
| RICHARD LIEBERMAN, as an individual and as trustee of the Richard Lieberman, M.D. APC Defined Benefit Pension Plan,<br><br>             Plaintiff,<br><br>    vs.<br><br>HAWK MANAGEMENT L.P.;<br>HWC LLC;<br>DAVID S. CALLAN; and<br>RICHARD SCOTT WILLIAMS,<br><br>          Defendants. | Docket No.<br>   CIVIL ACTION NO.<br><br>To:  (Name and Address of Defendant)<br><br>RICHARD SCOTT WILLIAMS<br>159 North State Street<br>Newton, PA  18940 |

| YOU ARE HEREBY SUMMONED and required to serve upon |
|---|
| Plaintiff's Attorney (Name and Address)<br><br>Robert L. Ebby<br>One Logan Square, 27th Floor<br>Philadelphia, PA 19103<br>(215) 568- 6200<br><br>(Attorneys for RICHARD LIEBERMAN, as an individual and as<br>trustee of the Richard Lieberman, M.D. APC Defined Benefit Pension Plan) |

an answer to the complaint which is herewith served upon you, within 21 days after service of this summons upon you (not counting the day you received it). If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

| Clerk | Date |
|---|---|
| (By) Deputy Clerk | |

## RETURN OF SERVICE

| | Date |
|---|---|
| Service of the Summons and Complaint was made by me[1] | |
| Name of Server | Title |

Check one box below to indicate appropriate method of service

Served personally upon the defendant.  Place where served _____

_____

Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person with whom the summons and complaint were left:

_____

Other (specify) _____

_____

_____

## STATEMENT OF SERVICE FEES

| Travel | Services | Total |
|---|---|---|
| | | |

## DECLARATION OF SERVER

   I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____        _____
                    Date                                               Signature of Server

                                                                  _____
                                                                  Address of Server

1)  As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

&JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JSS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

RICHARD LIEBERMAN, individually and as trustee of the Richard Lieberman, M.D. APC Defined Benefit Pension Plan

(b) County of Residence of First Listed Plaintiff Sonoma County, CA
(EXCEPT IN U.S. PLAINTIFF CASES)

## DEFENDANTS

HAWK MANAGEMENT L.P.; HWC LLC; DAVID S. CALLAN; and RICHARD SCOTT WILLIAMS

County of Residence of First Listed Lower Bucks County, PA
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)

Robert L. Ebby
HANGLEY ARONCHICK SEGAL & PUDLIN
One Logan Square, 27th Floor
Philadelphia, PA 19103        (215) 568- 6200

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S Government Plaintiff

☐ 2  U.S. Government Defendant

☐ 3  Federal Question (U.S. Government Not a Party)

☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PLF | DEF | | | PLF | DEF |
|---|---|---|---|---|---|---|
| Citizens of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated or Principal Place of Business In Another State | | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

### CONTRACT
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☒ 190 Other Contract
- ☐ 195 Contract Product Liability

### TORTS
**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

**PERSONAL INJURY**
- ☐ 362 Personal Injury – Med. Malpractice
- ☐ 365 Personal Injury – Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL INJURY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### FORFEITURE/PENALTY
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

### LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

### BANKRUPTCY
- ☐ Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

### SOCIAL SECURITY
- ☐ 851 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIW C/DIW W (405 (g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAXSUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS – Third Party 26 USC 7609

### OTHER STATUTES
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions

### REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### CIVIL RIGHTS
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 440 Other Civil Rights

### PRISONER PETITIONS
- ☐ 510 Motions to Vacate Sentence
  Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

28 U.S.C. 1332; breach of contract and tort claims.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND in excess of $150,000

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):

JUDGE _____        DOCKET NUMBER _____

DATE
March 9, 2010

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

&JS 44 Reverse (Rev. 3/99)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORMS JS–44

## Authority For Civil Cover Sheet

The JS–44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of the Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.**     (a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identity first the agency and then the official, giving both name and title.

     (b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the country where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

     (c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**     **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States, are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.**     **Residence (citizenship) of Principal Parties.** This section of the JS–44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**     **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.**     **Origin.** Place an "X" in one of the seven boxes.

Origin Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a) Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.**     **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause.

**VII.**     **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**     **Related Cases** This section of the JS–44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

APPENDIX I

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| RICHARD LIEBERMAN, individually and as trustee of the Richard Lieberman, M.D. APC Defined Benefit Pension Plan | : : : : | CIVIL ACTION |
| v. | : : | NO. |
| HAWK MANAGEMENT L.P.; HWC LLC; DAVID S. CALLAN; and RICHARD SCOTT WILLIAMS | : : : | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of the court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a)   Habeas Corpus -- Cases brought under 28 U.S.C. §2241 through §2255.          (     )

(b)   Social Security -- Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.                    (     )

(c)   Arbitration -- Cases required to be designated for arbitration under Local Civil Rule 53.2.    (     )

(d)   Asbestos -- Cases required involving claims for personal injury or property damage from
exposure to asbestos.                                                             (     )

(e)   Special Management -- Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court.  (See reverse side of this form for a detailed explanation of special
management cases.)                                                                (     )

(f)   Standard Management -- Cases that do not fall into any one of the other tracks.      (X)

| | | |
|---|---|---|
| | | RICHARD LIEBERMAN, individually and as trustee of the Richard Lieberman, M.D. APC |
| March 9, 2010 | Robert L. Ebby | Defined Benefit Pension Plan |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 496-7053 | (215) 568-0300 | rebby@hangley.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff:

RICHARD LIEBERMAN, individually and as trustee of the Richard Lieberman, M.D. APC Defined Benefit Pension Plan
514 Petersen Lane
Petaluma, CA  94952

Address of Defendants:

HAWK MANAGEMENT L.P.
159 North State Street
Newton, PA  18940;

DAVID S. CALLAN
159 North State Street
Newton, PA  18940; and

HWC LLC
159 North State Street
Newton, PA  18940;

RICHARD SCOTT WILLIAMS
159 North State Street
Newton, PA  18940

Place of Accident, Incident or Transaction: ___Within this District and in the Northern District of California___

(Use Reverse Side for Additional Space)

Does this case involve multidistrict litigation possibilities?               Yes ☐          No ☒

*RELATED CASE, IF ANY:*

Case Number: _____          Judge _____          Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1.  Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
    Yes ☐          No ☐

2.  Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
    Yes ☐          No ☐

3.  Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
    Yes ☐          No ☐

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A.  *Federal Question Cases:*

1.  ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2.  ☐ FELA
3.  ☐ Jones Act-Personal Injury
4.  ☐ Antitrust
5.  ☐ Patent
6.  ☐ Labor-Management Relations
7.  ☐ Civil Rights
8.  ☐ Habeas Corpus
9.  ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify)

B.  *Diversity Jurisdiction Cases:*

1.  ☒ Insurance Contract and Other Contracts
2.  ☐ Airplane Personal Injury
3.  ☐ Assault, Defamation
4.  ☐ Marine Personal Injury
5.  ☐ Motor Vehicle Personal Injury
6.  ☐ Other Personal Injury (Please specify)
7.  ☐ Products Liability
8.  ☐ Products Liability — Asbestos
9.  ☐ All other Diversity Cases
    (Please specify)

CIV. 609 (9/99)

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, <u>Robert L. Ebby</u> , counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☒ Relief other than monetary damages is sought.

Date: <u>March 9, 2010</u>          Robert L. Ebby          74249
                              <u>Attorney-at-Law</u>          <u>Attorney I.D.#</u>

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

Date: <u>March 9, 2010</u>          Robert L. Ebby          74249
                              <u>Attorney-at-Law</u>          <u>Attorney I.D.#</u>

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD LIEBERMAN, as an individual and as Trustee of the Richard Lieberman, M.D. APC Defined Benefit Pension Plan 514 Petersen Lane Petaluma, CA 94952, | : : : : : : | CIVIL ACTION |
| Plaintiff, | : : : | |
| vs. | : : | Case No. |
| HAWK MANAGEMENT L.P. 159 North State Street Newton, PA 18940; | : : : : | |
| HWC LLC 159 North State Street Newton, PA 18940; | : : : : | |
| DAVID S. CALLAN 159 North State Street Newton, PA 18940; and | : : : : | |
| RICHARD SCOTT WILLIAMS 159 North State Street Newton, PA 18940; | : : : : : | **JURY TRIAL DEMAND** |
| Defendants. | : | |

## **COMPLAINT**

Plaintiff Dr. Richard Lieberman, individually and as trustee of the Richard Lieberman,

M.D. APC Defined Benefit Pension Plan (the "Pension Plan"), alleges for his Complaint against

defendants as follows:

### **INTRODUCTION**

1.      This action concerns defendants' abuse of Dr. Lieberman's more than $1.5

million investment in their fund, Hawk Opportunity Fund, L.P. (the "Fund").  Although

defendants assured Dr. Lieberman, and the investment documents expressly provide, that

Dr. Lieberman could voluntarily withdraw from the Fund and cash in his investment, defendants have refused to liquidate and return Dr. Lieberman's investment, despite repeated demand. Instead, defendants have used Dr. Lieberman's funds for their own investment plans. Defendants, again in violation of their obligations and the Fund provisions and despite repeated demand, have also refused to provide Dr. Lieberman with all of the details regarding his investment and the Fund in general.  Accordingly, Dr. Lieberman brings this action to enforce his rights and get his money back.

## THE PARTIES, JURISDICTION, AND VENUE

2.      Dr. Lieberman is an individual who maintains a residence at 514 Petersen Lane, Petaluma, California 94952.  He is the trustee for the Pension Plan.

3.      The Fund is a Delaware limited partnership that maintains a principal place of business at 159 North State Street, Newton, Pennsylvania 18940.

4.      Defendant Hawk Management L.P. ("Hawk Management") is a Delaware limited partnership that maintains a principal place of business at 159 North State Street, Newton, Pennsylvania 18940.  Hawk Management is the general partner of the Fund.

5.      Defendant HWC LLC ("HWC") is a Delaware limited liability company that maintains a business address at 159 North State Street, Newton, Pennsylvania 18940.  HWC is the general partner of Hawk Management.

6.      Defendant Richard Scott Williams is an individual who maintains a business address at 159 North State Street, Newton, Pennsylvania 18940.

7.      Defendant David S. Callan is an individual who maintains a business address at 159 North State Street, Newton, Pennsylvania 18940.

8.      Upon information and belief, Williams and Callan are the sole members of HWC and, together with HWC, control and direct Hawk Management and the Fund.

2

9.      Upon information and belief, both Williams and Callan are domiciled in Pennsylvania.

10.      Upon information and belief, Williams and Callan are the alter egos of Hawk Management and HWC, and HWC is also the alter ego of Hawk Management.  Also upon information and belief, Williams and Callan have used and use Hawk Management and HWC for their own benefit and have treated the assets of the Fund as their own.

11.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, exclusive of interests and costs, and the controversy is between parties that are deemed citizens of different states.

12.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because (a) defendants are deemed to reside in this district for purposes of venue, and (b) a substantial part of the events and omissions giving rise to this action occurred in this district.

## BACKGROUND

13.      In approximately 2005, defendants and Dr. Lieberman began discussing his potential participation in the Fund as a limited partner.  To encourage his participation, defendants, among other things, provided Dr. Lieberman with various documents concerning the Fund, including a Confidential Private Placement Memorandum; a Limited Partnership Agreement dated as of August 13, 2004 (the "Limited Partnership Agreement"); and Subscription Agreements.  A copy of the Limited Partnership Agreement is attached as Exhibit 1.

14.      The Limited Partnership Agreement expressly provides that Dr. Lieberman can voluntarily withdraw from the Fund and cash in his investment.

15.      Specifically, Section 7.02(a) of the Limited Partnership Agreement provides for voluntary withdrawals by the limited partners.  It states in relevant part:

3

> [E]ach Partner shall have the right as of the last Business Day of each Fiscal Quarter, upon 30 days' prior written notice to the General Partner, to (i) withdraw any amount from such Limited Partner's Capital Account (not including such Partner's interest, if any, in any Private Placement Account) or (ii) voluntarily withdraw from the Partnership, and thereby withdraw all amounts from such Limited Partner's Capital Account (not including such Partner's interest, if any, in any Private Placement Account).

16.    Although Section 2.04(f) of the Limited Partnership Agreement allows the General Partner to establish one or more "Private Placement Accounts," the Limited Partnership Agreement limits the amount that the General Partner may invest in such accounts.  Specifically, the Limited Partnership Agreement provides in part:

> [A]fter the first year of the Partnership's operations, the Partnership shall not establish a Private Placement Account for a Private Placement Investment if the value of all Private Placement Investments held in Private Placement Accounts (including any proposed Private Placement Account) would exceed 20% of the Partnership's total assets, and not more than 5% of the Partnership's total assets will be invested in a single Private Placement Investment.

17.    The Limited Partnership Agreement also includes certain accounting and disclosure requirements.

18.    Among other things, Section 4.03(a) of the Limited Partnership Agreement provides in relevant part:

> The Partnership shall maintain a separate Private Placement Account on its books for each Private Placement Investment and any related Follow-Up Investment made by the Partnership, and the Net Private Placement Account Profits and Net Private Placement Account Losses for each Private Placement Account shall be separately calculated and allocated pursuant to Section 4.05.

19.    Similarly, Section 11.04 of the Limited Partnership Agreement provides in relevant part:

> (a) Within 90 days after the end of each Fiscal Year or as soon thereafter as is reasonably possible, the Partnership shall prepare and mail to each Partner, together with the report thereon of the accountants selected by the General Partner, an audited financial report setting forth as of the end of such Fiscal Year:
>
> (i) a balance sheet of the Partnership;

4

> (ii) a statement showing the Net Capital Appreciation or Net Capital Depreciation as the case may be, for such year;
>
> (iii) a statement showing the Fund's investment positions, as is required by generally accepted accounting principles;
>
> (iv) such Partner's Capital Account as of the end of such year; and
>
> (v) such Partner's Partnership Percentage as of the end of such year.
>
> (b) The Partnership will also provide periodic unaudited performance information, no less frequently than quarterly, to the Limited Partners, in such form and detail as the General Partner shall determine.

20.     On or about May 21, 2005, in reliance on defendants' representations and the Limited Partnership Agreement, Dr. Lieberman, individually and as trustee of the Pension Plan, accepted and executed the Subscription Agreement and the Limited Partnership Agreement.

21.     On or about October 21, 2005, again in reliance on defendants' representations and the Limited Partnership Agreement, Dr. Lieberman accepted and executed the Subscription Agreement for his Individual Retirement Account.

22.     Dr. Lieberman subsequently invested over $1.5 million in the Fund, individually and as trustee for the Pension.

23.     Once again, in connection with making at least certain of these investments, defendants reassured Dr. Lieberman that he could voluntarily withdraw from the Fund and otherwise liquidate his investments at his discretion.

24.     According to defendants, Dr. Lieberman's investments were segregated into three separate accounts:  a Personal Account; a Pension Account; and an IRA Account.

25.     On March 3, 2008, after defendants had informed Dr. Lieberman that the value of his Personal Account was more than $545,000, Dr. Lieberman advised defendants that he was exercising his right to withdraw his Personal Account from the Fund and requested that they liquidate the account and send him the resulting funds within 60 days.

26.     Defendants ignored Dr. Lieberman's instructions.

27.     On or about April 16, 2009, after defendants advised Dr. Lieberman that, as of December 31, 2008, the value of his Personal Account had dropped to $483,043; the value of his IRA Account was $59,425; and the value of his Pension Plan Account was $1,211,425 (or collectively $1,753,894), Dr. Lieberman advised defendants that he was exercising his right to withdraw all of his investments in the Fund and demanded that defendants take the steps necessary to accomplish a complete divestiture of his three accounts and then distribute the resulting funds to him.

28.     Once again, defendants ignored Dr. Lieberman.

29.     On June 1, 2009, Dr. Lieberman again demanded that defendants liquidate his investments in the Fund and provide him with the resulting funds.

30.     In response, defendants acknowledged that Dr. Lieberman's three accounts totaled $1,753,894 in value, but defendants refused to divest the accounts, stating that, contrary to the 20% limit for the Fund, defendants had invested 98% of the Fund in Private Placement Accounts, which they refused to liquidate.

31.     On June 17, 2009, Dr. Lieberman demanded that defendants provide, among other things, the reports required by Section 11.04(a) of the Limited Partnership Agreement for the 2008 fiscal year and the quarterly reports required by Section 11.04(b); the exact amount in each of Dr. Lieberman's capital accounts purportedly invested in each Private Placement Investment and the percentage interest of each such capital account in each Private Placement Investment; the Partnership Percentage of each Lieberman Capital Account at the time of investment in each Private Placement Investment; and a copy of the Fund's SEC Regulation D and Blue Sky filings.

32.     Once again, defendants refused.

33.   On September 30, 2009, Dr. Lieberman again demanded this information.

34.   Yet again, defendants ignored or refused Dr. Lieberman's demands.

## COUNT I
### (Breach of Contract against All Defendants)

35.   Dr. Lieberman incorporates the allegations of the preceding paragraphs.

36.   The Limited Partnership Agreement constitutes a binding contract between Dr. Lieberman and Hawk Management as well as with HWC, Williams, and Callan, as the alter egos of Hawk Management.

37.   Dr. Lieberman duly performed all of his obligations, covenants, and promises under the Limited Partnership Agreement.

38.   By engaging in the above-described conduct, defendants materially breached the Limited Partnership Agreement, including the implied covenant of good faith and fair dealing.

39.   As a direct and proximate result of these breaches, Dr. Lieberman has suffered damages in an amount in excess of $150,000.

WHEREFORE, Dr. Lieberman respectfully requests that this Court grant judgment in his favor, together with the following relief:

    a.   The imposition of a constructive trust in favor of Dr. Lieberman on the Fund's assets in an amount at least equal to the value of Dr. Lieberman's accounts in the Fund;

    b.   Compensatory damages;

    c.   An accounting for all of Dr. Lieberman's investments and accounts; and

    d.   Such other relief as this Court deems just and proper.

## COUNT II
### (Breach of Fiduciary Duty against All Defendants)

40.   Dr. Lieberman incorporates the allegations of the preceding paragraphs.

41.     Defendants Hawk Management, HWC, Callan, and Williams had and have full and complete control and charge of all affairs of the Fund and the management and control of the Fund's business, acting on Dr. Lieberman's behalf for purposes of investing his money.

42.     These defendants were and are in fiduciary relationships with Dr. Lieberman and owed and owe him fiduciary duties.

43.     By engaging in the above-described conduct, these defendants breached their fiduciary obligations to Dr. Lieberman.

44.     These defendants engaged in the foregoing conduct intentionally and with malice or recklessness and without justification or excuse.

45.     As a direct and proximate result of these breaches, Dr. Lieberman has suffered damages in an amount in excess of $150,000.

WHEREFORE, Dr. Lieberman respectfully requests that this Court grant judgment in his favor, together with the following relief:

a.     The imposition of a constructive trust in favor of Dr. Lieberman on the Fund's assets in an amount at least equal to the value of Dr. Lieberman's accounts in the Fund;

b.     Compensatory damages;

c.     An accounting for all of Dr. Lieberman's investments and accounts;

d.     Punitive damages; and

e.     Such other relief as this Court deems just and proper.

### COUNT III (In the Alternative)
### (Conversion against All Defendants)

46.     Dr. Lieberman incorporates the allegations of the preceding paragraphs.

47.     Dr. Lieberman was and still is the owner of his limited partnership interests and was, and still is, entitled to withdraw from the Limited Partnership.

48.     By engaging in the foregoing conduct, defendants have converted Dr. Lieberman's property.

49.     Defendants acted intentionally and with malice or reckless disregard and without excuse or justification.

WHEREFORE, Dr. Lieberman respectfully requests that this Court grant judgment in his favor, together with the following relief:

a.     The imposition of a constructive trust in favor of Dr. Lieberman on the Fund's assets in an amount at least equal to the value of Dr. Lieberman's accounts in the Fund;

b.     Compensatory damages;

c.     An accounting for all of Dr. Lieberman's investments and accounts;

d.     Punitive damages; and

e.     Such other relief as this Court deems just and proper.

### COUNT IV (In the Alternative)
### (Fraud/Misrepresentation)

50.     Dr. Lieberman incorporates the allegations of the preceding paragraphs.

51.     As described above, defendants represented that Dr. Lieberman could voluntarily withdraw from the Fund and cash in his investment.

52.     Defendants made these representations with knowledge of their falsity, with reckless disregard as to their accuracy, or under circumstances in which they should have known of their falsity.

53.     Defendants intended Dr. Lieberman to rely on these representations.

54.     Unbeknown to Dr. Lieberman, defendants' representations were false, and Dr. Lieberman reasonably relied on these representations to his detriment.

9

55.     As a direct result of defendants' actions, Dr. Lieberman has suffered damages in excess of $150,000.

WHEREFORE, Dr. Lieberman respectfully requests that this Court grant judgment in his favor, together with the following relief:

a.      The imposition of a constructive trust in favor of Dr. Lieberman on the Fund's assets in an amount at least equal to the value of Dr. Lieberman's accounts in the Fund;

b.      Compensatory damages;

c.      An accounting for all of Dr. Lieberman's investments and accounts;

d.      Punitive damages; and

e.      Such other relief as this Court deems just and proper.

## COUNT V (In the Alternative)
### (Tortious Interference with Contract against HWC, Williams, and Callan)

56.     Dr. Lieberman incorporates the allegations of the preceding paragraphs.

57.     HWC, Williams, and Callan were aware of, or reasonably should have been aware of, Dr. Lieberman's participation in the Fund and contract with Hawk Management.

58.     By engaging in the conduct described above, these defendants have improperly and without justification, privilege, or excuse, intentionally and knowingly interfered with Dr. Lieberman's participation in the Fund and contract with Hawk Management and induced or otherwise caused Hawk Management to breach this contract.

59.     As a direct result of these defendants' conduct, Dr. Lieberman has suffered damages in excess of $150,000.

WHEREFORE, Dr. Lieberman respectfully requests that this Court grant judgment in his favor, together with the following relief:

a.   The imposition of a constructive trust in favor of Dr. Lieberman on the Fund's assets in an amount at least equal to the value of Dr. Lieberman's accounts in the Fund;

b.   Compensatory damages;

c.   An accounting for all of Dr. Lieberman's investments and accounts;

d.   Punitive damages; and

e.   Such other relief as this Court deems just and proper.

### COUNT VI (In the Alternative)
### (Unjust Enrichment against All Defendants)

60.   Dr. Lieberman incorporates the allegations of the preceding paragraphs.

61.   As described above, Dr. Lieberman invested more than $1.5 million in the Fund, which defendants have refused to liquidate and return, instead using his money for their own benefits.

62.   Defendants have not otherwise compensated Dr. Lieberman.

63.   Defendants have unfairly benefited from Dr. Lieberman's investment, to Dr. Lieberman's detriment and under circumstances in which it would be unjust to permit defendants to enjoy these benefits without just compensation to Dr. Lieberman.

64.   As a direct and proximate result of these breaches, Dr. Lieberman has suffered damages in an amount in excess of $150,000.

WHEREFORE, Dr. Lieberman respectfully requests that this Court grant judgment in his favor, together with the following relief:

a.   The imposition of a constructive trust in favor of Dr. Lieberman on the Fund's assets in an amount at least equal to the value of Dr. Lieberman's accounts in the Fund;

b.   Compensatory damages;

c.   An accounting for all of Dr. Lieberman's investments and accounts; and

d.   Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Dr. Lieberman demands a jury on all issues so triable.

Respectfully submitted,

HANGLEY ARONCHICK SEGAL
  & PUDLIN

Dated:  March 9, 2010

By: _____
     Robert L. Ebby
     One Logan Square, 27th Floor
     Philadelphia, PA 19103
     (215) 568- 6200

Attorneys for RICHARD LIEBERMAN,
as an individual and as trustee of the
Richard Lieberman, M.D. APC Defined
Benefit Pension Plan

**EXHIBIT 1**

# HAWK OPPORTUNITY FUND L.P.

## LIMITED PARTNERSHIP AGREEMENT

THESE SECURITIES ARE SUBJECT TO RESTRICTIONS ON TRANSFERABILITY AND RESALE AND MAY NOT BE TRANSFERRED OR RESOLD EXCEPT AS PERMITTED UNDER THE TERMS OF APPLICABLE STATE AND FEDERAL SECURITIES LAWS (OR EXEMPTIONS THEREFROM), AND AS PERMITTED BY THIS LIMITED PARTNERSHIP AGREEMENT. WITHDRAWALS FROM THE PARTNERSHIP ARE SUBJECT TO SIGNIFICANT RESTRICTIONS AS TO THE TIMING OF SUCH WITHDRAWALS. IN ADDITION, WITHDRAWALS FROM THE PARTNERSHIP ARE SUBJECT TO PENALTY IF THEY OCCUR DURING RESTRICTED PERIODS. THEREFORE, INVESTORS IN THE SECURITIES ISSUED BY THE PARTNERSHIP SHOULD NOT RELY ON THE LIQUIDITY OF THIS INVESTMENT AND SHOULD BE PREPARED TO BEAR THE FINANCIAL RISKS OF THIS INVESTMENT FOR AN INDEFINITE PERIOD OF TIME.

NEITHER HAWK OPPORTUNITY FUND L.P. (THE "FUND"), NOR THE LIMITED PARTNERSHIP INTERESTS THEREIN (THE "INTERESTS") HAVE BEEN OR WILL BE REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), THE INVESTMENT COMPANY ACT OF 1940, AS AMENDED (THE "INVESTMENT COMPANY ACT"), OR THE SECURITIES LAWS OF ANY OF THE STATES OF THE UNITED STATES. IT IS ANTICIPATED THAT THE OFFERING AND SALE OF SUCH INTERESTS WILL BE EXEMPT FROM REGISTRATION UNDER THE SECURITIES ACT PURSUANT TO REGULATION D PROMULGATED THEREUNDER. IT IS ALSO ANTICIPATED THAT THE FUND WILL CONDUCT ITS ACTIVITIES SO AS NOT TO BE DEEMED AN INVESTMENT COMPANY UNDER THE INVESTMENT COMPANY ACT.

THE DELIVERY OF THIS LIMITED PARTNERSHIP AGREEMENT SHALL NOT CONSTITUTE AN OFFER TO SELL OR THE SOLICITATION OF AN OFFER TO BUY NOR SHALL THERE BE ANY OFFER, SOLICITATION OR SALE OF INTERESTS IN ANY JURISDICTION IN WHICH SUCH OFFER, SOLICITATION OR SALE IS NOT AUTHORIZED OR TO ANY PERSON TO WHOM IT IS UNLAWFUL TO MAKE SUCH OFFER, SOLICITATION OR SALE.

# TABLE OF CONTENTS

ARTICLE I DEFINITIONS ..................................................................................................1

Section 1.01. Certain Defined Terms.........................................................................1

ARTICLE II GENERAL PROVISIONS ...........................................................................4

Section 2.01. Formation................................................................................................4

Section 2.02. Name ......................................................................................................5

Section 2.03. Registered Office...................................................................................5

Section 2.04. Purpose: Powers. ..................................................................................5

Section 2.05. Filings: Agent for Service of Process..................................................6

Section 2.06. Title to Property.....................................................................................7

Section 2.07. Payments of Individual Obligation .....................................................7

Section 2.08. Independent Activities; Transactions with Affiliates.........................7

Section 2.09. Assignability of Interest........................................................................8

ARTICLE III MANAGEMENT ........................................................................................8

Section 3.01. Authority of the General Partner .........................................................8

Section 3.02. Duties and Obligations of the General Partner ................................12

Section 3.03. Exculpation ..........................................................................................12

Section 3.04. Indemnification of the General Partner.............................................13

Section 3.05. Management Fee: Payment of Certain Costs and Expenses............13

Section 3.06. Withdrawal, Removal and Termination of General Partner ............14

ARTICLE IV ...................................................................................................................15

Section 4.01. Capital Contributions..........................................................................15

Section 4.02. Capital Accounts .................................................................................15

Section 4.03. Private Placement Accounts..............................................................................15

Section 4.03. Partnership Percentages ..................................................................................16

Section 4.04. Allocation of Net Capital Appreciation or Net Capital Depreciation...............16

Section 4.05. Regulatory Amendments..................................................................................19

Section 4.06. Valuation of Assets..........................................................................................19

Section 4.07. Liabilities .........................................................................................................21

Section 4.08. Allocation for Tax Purposes............................................................................21

Section 4.09. Determination by General Partner of Certain Matters: General Partner Discretion.....................22

Section 4.10. Adjustments to Take Account of Interim Year Events ......................................22

ARTICLE V ROLE OF PARTNERS.............................................................................22

Section 5.01. Rights or Powers .............................................................................................23

Section 5.02. Voting Rights...................................................................................................23

Section 5.03. Withdrawal/Resignation...................................................................................23

Section 5.04. Partner Compensation......................................................................................23

Section 5.05. Partner Liability................................................................................................23

Section 5.06. Partition ...........................................................................................................24

ARTICLE VI POWER OF ATTORNEY .......................................................................24

Section 6.01. General Partner as Attorney-In-Fact................................................................24

Section 6.02. Nature of Special Power ..................................................................................25

ARTICLE VII VOLUNTARY WITHDRAWALS; DISTRIBUTIONS OF CAPITAL .........25

Section 7.01. Withdrawals and Distributions in General ........................................................26

Section 7.02. Voluntary Withdrawals....................................................................................26

ARTICLE VII ADMISSION OF NEW PARTNERS .....................................................28

Section 8.01. New Partners...................................................................................................28

ARTICLE IX INVOLUNTARY WITHDRAWALS........................................................28

Section 9.01. Death, etc. of Limited Partner ....................................................................28

Section 9.02. Required Withdrawals .............................................................................28

Section 9.03. Payment of Withdrawals ..........................................................................28

ARTICLE X DURATION AND TERMINATION OF THE PARTNERSHIP ......................29

Section 10.01. Duration ..............................................................................................29

Section 10.02. Termination .........................................................................................29

Section 10.03. Method of Distributions .........................................................................29

ARTICLE XI TAX RETURNS; REPORTS TO PARTNERS .............................................30

Section 11.01. Independent Auditors .............................................................................30

Section 11.02. Filing of Tax Returns .............................................................................30

Section 11.03. Tax Matters ..........................................................................................30

Section 11.04. Reports to Current Partners ....................................................................30

Section 11.05. Tax Reports ..........................................................................................31

ARTICLE XII ..............................................................................................................31

Section 12.01. Miscellaneous ......................................................................................31

Section 12.02. General ...............................................................................................31

Section 12.03. Choice of Law ......................................................................................31

Section 12.04. Notices ...............................................................................................32

Section 12.05. Amendments ........................................................................................32

Section 12.06. Adjustment of Basis of Partnership Property ............................................33

Section 12.07. Goodwill .............................................................................................33

Section 12.08. Headings .............................................................................................33

Section 12.09. Pronouns .............................................................................................33

Section 12.10. Severability .........................................................................................33

The undersigned Hawk Management L.P., a Delaware limited partnership ("Hawk Management"), as General Partner, and each of the persons who shall have executed a counterpart of a Subscription Agreement or of the signature page hereto, as Limited Partners, hereby enter into this Limited Partnership Agreement, as of August 13, 2004 pursuant to the Act (as defined below), on the following terms and conditions:

## ARTICLE I

## DEFINITIONS

Section 1.01. <u>Certain Defined Terms.</u> As used in this Agreement, the following terms shall have the following meanings:

"<u>Act</u>" shall mean the Delaware Revised Uniform Limited Partnership Act, 6 Del. C. §17.01, et seq., as amended from time to time (or any corresponding provisions of succeeding law).

"<u>Accounting Period</u>" shall mean the following periods: The initial Accounting Period shall commence upon the Effective Date. Each subsequent Accounting Period shall commence immediately after the close of the next preceding Accounting Period. Each Accounting Period hereunder shall close at the close of business on the first to occur of (i) the last day of each Fiscal Quarter, (ii) the date immediately prior to the effective date of the admission of a new Limited Partner pursuant to Section 8.01, (iii) the date immediately prior to the effective date of the increase in a Partner's Capital Account as a result of an Additional Capital Contribution pursuant to Section 4.01(b), (iv) the effective date of any withdrawal pursuant to Articles VII or IX hereof or (v) the date when the Partnership is terminated in accordance with Article X hereof.

"<u>Additional Capital Contribution</u>" shall mean any capital contribution by a Limited Partner, other than such Person's Initial Capital Contribution.

"<u>Admission Date</u>" has the meaning specified in Section 7.02(c).

"<u>Affiliate</u>" shall mean, with respect to any Person (i) any Person directly or indirectly controlling, controlled by or under common control with such Person, (ii) any Person owning or controlling ten percent (10%) or more of the outstanding voting interests of such Person, (iii) any officer, director, general partner, member or trustee of, or Person serving in a similar capacity with respect to, such Person or (iv) any Person who is an officer, director, general partner, member, trustee or holder of 10% or more of the voting interests of any Person described in clauses (i), (ii) or (iii) of this sentence. For purposes of this definition, the terms "controlling," "controlled by" or "under common control with" shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person or entity, whether through the ownership of voting securities, by contract or otherwise.

"Affiliate Partner" shall mean, at any date, any Related Person who has delivered a Subscription Agreement and an Initial Capital Contribution to the Partnership and as of such date has not ceased to be an Affiliate Partner of the Partnership.

"Agreement" shall mean this Limited Partnership Agreement of Hawk Opportunity Fund L.P. as amended from time to time, which shall constitute the limited partnership agreement of the Partnership for all purposes of the Act. Words such as "herein," "hereinafter," "hereof," "hereto" and "hereunder" refer to this Agreement as a whole, unless the context otherwise requires.

"Beginning Value" shall mean, with respect to any Accounting Period, the Partnership's Net Assets at the beginning of such Accounting Period after deduction of the Management Fee.

"Business Day" shall be any day that commercial banks in New York, New York are open for business.

"Capital Account" has the meaning specified in Section 4.02.

"Capital Contribution" shall mean any conveyance or payment of cash by way of a capital contribution by a Partner to the Partnership.

"Certificate" shall mean the certificate of formation of the Partnership filed with the Secretary of State of the State of Delaware pursuant to the Act to form the Partnership, as originally executed and as amended, modified, supplemented or restated from time to time, as the context requires.

"Certificate of Cancellation" shall mean a certificate filed in accordance with §17-203 of the Act.

"Code" has the meaning specified in Section 2.09.

"Hawk Management" has the meaning specified in the introductory statement.

"Effective Date" shall mean the date hereof.

"Ending Value" shall mean, with respect to any Accounting Period, the value of the Partnership's Net Assets at the end of such Accounting Period (before giving effect to withdrawals).

"ERISA" shall mean the Employee Retirement Income Security Act of 1974, as amended, and the rules and regulations promulgated thereunder.

"Fiscal Quarter" shall mean (i) the period commencing on the Effective Date *and* ending on March 31, 2005, (ii) any subsequent three-month period commencing on each of January 1, April 1, July 1 and October 1 and ending on the last date before the next such date and (iii) the period commencing on the immediately preceding January 1, April 1, July 1, or October 1, as the case may be, and ending on the date the Partnership is terminated in accordance with Article X hereof.

"Fiscal Year" shall mean (i) the period commencing on the Effective Date and ending on December 31, 2005, (ii) any subsequent twelve-month period commencing on January 1 and ending on December 31 and (iii) the period commencing on the immediately preceding January 1 and ending on the date the Partnership is terminated in accordance with Article X hereof.

"General Partner" shall initially mean Hawk Management, and any successor designated by the Investor Partners in accordance with Section 3.06.

"Indemnified Party" has the meaning specified in Section 3.04.

"Initial Capital Contribution" has the meaning specified in Section 4.01(a).

"Investor Partner" shall mean, at any date, any Person other than a Related Person or Hawk Management (or any successor General Partner) who has delivered a Subscription Agreement and an Initial Capital Contribution to the Partnership and as of such date has not ceased to be a Limited Partner of the Partnership.

"Limited Partner" shall be a Person that is an Affiliate Partner or an Investor Partner, and has not ceased to be a Limited Partner of the Partnership.

"Loss Recovery Account" has the meaning specified in Section 4.04(d).

"Memorandum Account" has the meaning specified in Section 4.04(h).

"Net Assets" shall mean the excess of the value of the Partnership's assets over its liabilities determined in accordance with this Agreement.

"Net Capital Appreciation" shall mean, (i) with respect to any Accounting Period, the excess, if any, of the Ending Value over the Beginning Value and (ii) with respect to any Fiscal Year or other period used to determine the Special Allocation or the Loss Recovery Account the aggregate Net Capital Appreciation for such period less the aggregate Net Capital Depreciation for such period, if a positive number.

"Net Capital Depreciation" shall mean, (i) with respect to any Accounting Period, the excess, if any, of the Beginning Value over the Ending Value and (ii) with respect to any Fiscal Year or other period used to determine the Special Allocation or the Loss Recovery Account, the aggregate Net Capital Appreciation for such period less the aggregate Net Capital Depreciation for such period, if a negative number.

"Other Accounts" has the meaning specified in Section 3.01.

"Partner(s)" shall mean any of the General Partner and the Limited Partners.

"Partnership" shall mean the limited partnership formed pursuant to this Agreement and the Certificate.

"Partnership Percentage" has the meaning specified in Section 4.03.

-3-

"Pass-Through Partner" has the meaning specified in Section 11.03.

"Person" means any natural person, partnership (whether general or limited), limited liability company, corporation, trust, estate, association, custodian, nominee or other individual or entity in its own or any representative capacity.

"Positive Basis" has the meaning specified in Section 4.08(c).

"Positive Basis Partner" has the meaning specified in Section 4.08(c).

"Private Placement Account" has the meaning specified in Section 2.04.

"Purchase Price" has the meaning specified in Section 4.04(h).

"Related Person" shall mean any stockholder of Hawk Management, and any parent, child, descendant, or sibling of such stockholder, the spouse of any of the foregoing or such stockholder's spouse and any trust, retirement account, custodian account or foundation which exists for the benefit of any of the foregoing Persons.

"Schedule of Capital Contributions" has the meaning specified in Section 4.01(a).

"Securities" has the meaning specified in Section 2.04.

"Securities Act" means the Securities Act of 1933, as amended, and the rules and regulations promulgated thereunder.

"Special Allocation" shall have the meaning specified in Section 4.04(b).

"Subscription Agreement" shall mean an executed Subscription Agreement delivered to the General Partner as of the date hereof or an executed Subscription Agreement delivered to the General Partner as of the date such subscriber is admitted as a Limited Partner, in each case in the form of Exhibit A hereto.

"Tax Matters Partner" has the meaning specified in Section 11.03.

"Unrestricted Partner" has the meaning specified in Section 4.04(g).


ARTICLE II

GENERAL PROVISIONS

Section 2.01. Formation. The Partners hereby agree to form the Partnership as a limited partnership under and pursuant to the provisions of the Act and upon the terms and conditions set forth in this Agreement. The fact that the Certificate is on file in the office of the Secretary of State of the State of Delaware shall constitute notice that the

Partnership is a limited partnership. The rights and liabilities of the Partners shall be as provided under the Act, the Certificate and this Agreement.

Section 2.02. Name. The name of the Partnership shall be Hawk Opportunity Fund L.P. The General Partner may change the name of the Partnership upon ten (10) days' notice to the Partners.

Section 2.03. Registered Office. The registered office of the Partnership in the State of Delaware shall be initially located at 1209 Orange Street, Wilmington, Delaware 19801.

Section 2.04. Purpose: Powers. The Partnership is organized for the purposes of investing in Securities and engaging in all activities and transactions as the General Partner may deem necessary or advisable in connection therewith, including, without limitation:

(a)     To invest, hold, sell or otherwise deal, on margin or otherwise, in securities and other financial instruments of United States and foreign entities, including, without limitation, capital stock; shares of beneficial interest; partnership interests and similar financial instruments; interests in real estate and real estate related assets; bonds, notes, debentures (whether subordinated, convertible or otherwise); currencies; interest rate, currency, commodity, equity and other derivative products, including, without limitation, (i) futures contracts (and options thereon) relating to stock indices, currencies, United States Government securities and securities of foreign governments, other financial instruments and all other commodities, (ii) swaps, options, warrants, caps, collars, floors, forward rate agreements and similar agreements, (iii) spot and forward currency transactions and (iv) agreements relating to or securing such transactions; equipment lease certificates; equipment trust certificates; loans; accounts and notes receivable and payable held by trade or other creditors; trade acceptances; contract and other claims; executory contracts; participations; mutual funds; money market funds; obligations of the United States or any state thereof, foreign governments and instrumentalities of any of them; commercial paper; certificates of deposit; banker's acceptances; trust receipts; and other obligations and instruments or evidences of indebtedness of whatever kind or nature; in each case, of any person, corporation, government or other entity whatsoever, whether or not publicly traded or readily marketable (all such items being called herein a "Security" or "Securities"), and to sell Securities short and cover such sales;

(b)     To engage in such other lawful Securities transactions as the General Partner may from time to time determine;

(c)     To possess, transfer, mortgage, pledge or otherwise deal in, and to exercise all rights, powers, privileges and other incidents of ownership or possession with respect to, Securities and other property and funds held or owned by the Partnership;

(d)     To maintain for the conduct of the Partnership's affairs one

or more offices and in connection therewith rent or acquire office space, and do such other acts as the General Partner may deem necessary or advisable in connection with the maintenance and administration of the Partnership;

(e)　　To lend, with or without security, any of the Securities, funds or other properties of the Partnership, including, without limitation, by entering into reverse repurchase agreements, and, from time to time without limit as to amount, borrow or raise funds, including, without limitation, by entering into repurchase agreements, and secure the payment of obligations of the Partnership by mortgage upon, or pledge or hypothecation of, all or any part of the property of the Partnership;

(f)　　To establish one or more accounts (the "Private Placement Accounts"), each of which shall be so denominated on the books of the Partnership, in connection with the Partnership's Private Placement Investments; provided, however, that after the first year of the Partnership's operations, the Partnership shall not establish a Private Placement Account for a Private Placement Investment if the value of all Private Placement Investments held in Private Placement Accounts (including any proposed Private Placement Account) would exceed 20% of the Partnership's total assets, and not more than 5% of the Partnership's total assets will be invested in a single Private Placement Investment. Such percentage limitations shall be determined at the time of investment by the General Partner in its sole discretion. The General Partner may determine that such Private Placement Investment shall no longer be held in a Private Placement Account and such Private Placement Investment shall be deemed to have been liquidated for fair value;

(g)　　To engage personnel, whether part-time or full-time, and attorneys, independent accountants or such other persons as the General Partner may deem necessary or advisable;

(h)　　To enter into custodial arrangements regarding Securities owned beneficially by the Partnership with banks and brokers wherever located;

(i)　　To delegate any of the foregoing activities to such other persons or entities in the General Partner's discretion, including but not limited to any affiliate of the General Partner; and

(j)　　To do such other acts as the General Partner may deem necessary or advisable in connection with the maintenance and administration of the Partnership.

Section 2.05. Filings: Agent for Service of Process.

(a)　　The General Partner is hereby authorized to and shall execute and cause the Certificate to be filed in the office of the Secretary of State of the State of Delaware in accordance with the Act. The General Partner shall take any and all other actions reasonably necessary to perfect and maintain the status of the Partnership as a limited partnership under the laws of the State of Delaware, including, without

limitation, the preparation, execution and filing of such amendments to the Certificate and such other assumed name certificates, documents, instruments and publications as may be required by law, including, without limitation, action to reflect:

> (i)  A change in the Partnership name;

> (ii)  A correction of false or erroneous statements in the Certificate or the desire of the Partners to make a change in any statement therein in order that it shall accurately represent the agreement among the Partners; or

> (iii)  Other changes that do not materially adversely affect the rights of the Partners.

> (b)  The Limited Partners and the General Partner shall execute and cause to be filed original or amended Certificates and shall take any and all other actions as may be reasonably necessary to perfect and maintain the status of the Partnership as a limited partnership or similar type of entity under the laws of any other jurisdictions in which the Partnership engages in business.

> (c)  The registered agent for service of process on the Partnership in the State of Delaware shall be The Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware  19801 or any successor as appointed by the General Partner in accordance with the Act.

> (d)  Upon the dissolution and completion of the winding up of the Partnership in accordance with Article X hereof, the liquidator of the Partnership, as an authorized person within the meaning of the Act, shall promptly execute and cause to be filed a Certificate of Cancellation in accordance with the Act and the laws of any other jurisdictions in which such liquidator deems such filing necessary or advisable.

Section 2.06. <u>Title to Property</u>. All property owned by the Partnership shall be owned by the Partnership as an entity and no Partner shall have any ownership interest in such property in such Partner's individual name, and each Partner's interest in the Partnership shall be personal property for all purposes. The Partnership shall hold title to all of its property in the name of the Partnership and not in the name of any Partner.

Section 2.07. <u>Payments of Individual Obligations</u>. The Partnership's credit and assets shall be used solely for the benefit of the Partnership, and no asset of the Partnership shall be transferred or encumbered for, or in payment of, any individual obligation of any Partner.

Section 2.08. <u>Independent Activities; Transactions with Affiliates</u>. The General Partner and its Affiliates shall devote so much of their time to the affairs of the Partnership as in the judgment of the General Partner the conduct of the Partnership's business shall reasonably require, and none of the General Partner or its Affiliates shall be obligated to do or perform any act or thing in connection with the Partnership's business not expressly set forth herein. Nothing herein contained in this Section 2.08 or elsewhere in this Agreement shall be deemed to preclude the General Partner or its Affiliates from

exercising investment responsibility, from engaging directly or indirectly in any other business or from directly or indirectly purchasing, selling, holding or otherwise dealing with any Securities for the account of any such other business, for their own accounts, for any of their family members or for other clients. No Limited Partner shall have, by reason of being a Partner in the Partnership, any right to participate in any manner in any profits or income earned or derived by or accruing to the General Partner or any Affiliate from the conduct of any business other than the business of the Partnership or from any transaction in Securities effected by the General Partner or such Affiliate for any account other than that of the Partnership.

Section 2.09. Assignability of Interest.

(a)     A Limited Partner may not assign his or her interest in the Partnership in whole or in part to any Person, or create or suffer the creation of a security interest in or other encumbrance on such interest, except by operation of law, without the prior written consent of the General Partner, which consent may be withheld by the General Partner in its sole and absolute discretion. In no event shall any Limited Partner's interest be assigned or transferred to any person unless the General Partner shall be satisfied that such assignment or transfer (i) is not in violation of any applicable federal or state securities laws, (ii) could not result in the Partnership being considered to have terminated within the meaning of Section 708 of the United States Internal Revenue Code of 1986, as amended (the "Code"), and (iii) could not result in the Partnership being treated as a "publicly traded partnership" under Section 7704 of the Code. Unless the General Partner is satisfied that the foregoing conditions have been met, no attempted assignment or transfer of any or all of a Limited Partner's interest in the Partnership shall be recognized or given effect, and shall not be binding on the Partnership.

(b)     In the event that a Limited Partner's interest is transferred in accordance with the terms of this Agreement, no transferee shall be admitted to the Partnership as a substitute Limited Partner and succeed to the Capital Account of the transferor to the extent it relates to such transferred interest until such Person shall have executed a counterpart to this Agreement. Thereafter such Person shall be subject to all provisions of this Agreement as if an original signatory thereto.

(c)     Each Limited Partner shall indemnify and hold harmless the Partnership and each other Partner against any and all losses, damages, liabilities, or expenses (including, without limitation, tax liabilities or loss of tax benefits) arising, directly or indirectly, as a result of any transfer or purported transfer by such Limited Partner.

ARTICLE III

MANAGEMENT

Section 3.01. Authority of the General Partner. The Partners intend that the Partnership be managed by the General Partner in accordance with Section 17-403 of the Act and subject to any restrictions set forth in the Certificate or this Agreement,

including, without limitation, those set forth in Section 2.04, the Partners hereby delegate all powers to control and manage the business and affairs of the Partnership and to bind the Partnership to, and such powers shall be exclusively vested in, the General Partner and the General Partner may exercise all powers of the Partnership and do all such lawful acts as are not by statute, the Certificate or this Agreement directed or required to be exercised or done by the Partners and in so doing shall have the right and authority to take all actions which the General Partner deems necessary, useful or appropriate for the management and conduct of the Partnership's business and affairs and in the pursuit of the purposes of the Partnership, including exercising the following specific rights and powers in the name of and on behalf of the Partnership:

(a)     Conduct its business, carry on its operations and have and exercise the powers granted by the Act in any state, territory, district or possession of the United States, or in any foreign country which may be necessary or convenient to effect any or all of the purposes for which it is organized;

(b)     Open, maintain and close accounts, including margin and custodial accounts, with brokers, including brokers affiliated with the General Partner, which power shall include the authority to issue all instructions and authorizations to brokers regarding the Securities and/or money therein; to pay, or authorize the payment and reimbursement of, brokerage commissions that may be in excess of the lowest rates available that are paid to brokers who execute transactions for the account of the Partnership and who (i) supply, or pay for (or rebate a portion of the Partnership's brokerage commissions to the Partnership for payment of) the cost of, brokerage, research or execution services utilized by the Partnership or the other accounts to whom the General Partner or any of its Affiliates provides investment services ("Other Accounts") and/or (ii) pay for (or rebate a portion of the Partnership's brokerage commissions for the payment of) obligations incurred in connection with the Partnership or the Partnership's share of such obligations (such as fees to sub-advisors, computer facilities and the cost of an accounting software package); provided that the Partnership does not pay a rate of commissions in excess of what is competitively available from comparable brokerage firms for comparable services, taking into account various factors, including commission rates, reliability, financial responsibility, strength of the broker and ability of the broker to efficiently execute transactions, the broker's facilities, and the broker's provision or payment of the costs of research and other services or property which are of benefit to the Partnership and related funds and accounts;

(c)     Open, maintain and close accounts, including custodial accounts, with banks, including banks located outside the United States, and draw checks or other orders for the payment of monies;

(d)     Enter into contracts for or in connection with investments in Securities;

(e)     Lend, either with or without security any Securities, funds or other properties of the Partnership and borrow or raise funds and secure the payment of obligations of the Partnership by pledges or hypothecation of all or any

-9-

part of the property of the Partnership;

(f)     Do any and all acts on behalf of the Partnership and exercise all rights of the Partnership, with respect to its interest in any Person, including, without limitation, the voting of Securities, participation in arrangements with creditors, the institution and settlement or compromise of suits and administrative proceedings and other like or similar matters;

(g)     Combine purchase or sale orders on behalf of the Partnership with orders for Other Accounts and allocate the Securities or other assets so purchased or sold, on an average price basis, among such accounts;

(h)     Enter into arrangements with brokers to open "average price" accounts wherein orders placed during a trading day are placed on behalf of the Partnership and Other Accounts and are allocated among such accounts using an average price;

(i)     Organize one or more corporations or other entities formed to hold record title, as nominee for the Partnership (whether alone or together with the Other Accounts), to Securities or funds of the Partnership;

(j)     Retain other Persons, selected by the General Partner, to provide certain management and administrative services to the Partnership and to cause the Partnership to compensate such Person for such services; provided, however, management, control and conduct of the activities of the Partnership shall remain the responsibility of the General Partner;

(k)     Retain, at the expense of the Partnership (to the extent such fees exceed commission rebates to the Partnership used to pay sub-advisors), one or more sub-advisors selected by the Partnership to provide investment research and analysis and/or discretionary management to the General Partner with respect to discrete portions of the assets of the Partnership; provided, however, that the management and conduct of the activities of the Partnership shall remain the responsibility of the General Partner;

(l)     Provide research and analysis and direct the formulation of investment policies and strategies for the Partnership;

(m)     Invest in other pooled investment vehicles, which investments shall be subject in each case to the terms and conditions of the respective governing document for such vehicle;

(n)     Execute any and all agreements, contracts, documents, certifications and instruments necessary or convenient in connection with managing the affairs of the Partnership, including executing amendments to this Agreement and the Certificate in accordance with the terms of this Agreement, both as General Partner and, if required, as attorney-in-fact for the Partners pursuant to the power of attorney granted by the Partners to the General Partner pursuant to Article VI;

(o)     Care for and distribute funds to the Partners by way of cash income, return of capital or otherwise, all in accordance with the provisions of this Agreement, and perform all matters in furtherance of the objectives of the Partnership or this Agreement;

(p)     Contract on behalf of the Partnership for the employment and services of employees and/or independent contractors, such as lawyers and accountants, and delegate to such Persons the duty to manage or supervise any or all of the assets or operations of the Partnership;

(q)     Engage in any kind of activity and perform and carry out contracts of any kind (including contracts of insurance covering risks to Partnership assets and Partner liability) necessary or incidental to, or in connection with, the accomplishment of the purposes of the Partnership, as may be lawfully carried on or performed by a limited partnership under the laws of each state in which the Partnership is then formed or qualified;

(r)     Appoint a person (the "Independent Client Representative") unaffiliated with the General Partner or any of its affiliates to act as the agent of the Partnership to give or withhold any consent of the Partnership required under applicable law to a transaction in which the General Partner causes the Partnership to purchase Securities or other instruments from or sell Securities or other instruments to the General Partner or its affiliates, or to engage in brokerage transactions in which any of their affiliates acts as broker for another person on the other side of the transaction as the Partnership.  If appointed, the Independent Client Representative may be paid by the Partnership and may be indemnified by the Partnership for claims arising out of activities in such capacity;

(s)     Admit one or more additional managers into the Partnership under such terms and conditions as the General Partner shall determine, but only after giving each Investing Partner not less than 30 days' prior written notice on the day on which an Investing Partner of this Partnership would be required to provide notice of withdrawal; provided, however, that, in connection with any reorganization of the General Partner or admission of an additional or substitute General Partner that does not involve a "change in control" of the General Partner or "assignment" within the meaning of the Investment Advisers Act of 1940, as amended, the General Partner may admit a successor or substitute entity as an additional or substitute General Partner of the Partnership, assign all of its right, title and interest in and to its Capital Account in the Partnership, if any, to such entity, and thereafter withdraw as a member in the Partnership, without such transaction being subject to the advance notice provisions of this Section 3.01(s). Following any such transaction, the term "General Partner," when used in this Agreement, shall refer to the successor General Partner.  The successor General Partner shall give prompt written notice following any such reorganization;

(t)     Take any action necessary or appropriate in order to ensure that the Partnership is not required to register as an investment company under the Investment Company Act, that the Interests are not required to be registered under the

U.S. Securities Act of 1933, as amended (the "Securities Act"), and that the Interests are not required to be registered or reported under the U.S. Securities Exchange Act of 1934, as amended;

        (u)     Take, or refrain from taking, all actions, not expressly proscribed or limited by this Agreement, as may be necessary or appropriate to accomplish the purposes of the Partnership;

        (v)     Institute, prosecute, defend, settle, compromise and dismiss lawsuits or other judicial or administrative proceedings brought on or in behalf of, or against, the Partnership, the Limited Partners or the General Partner in connection with activities arising out of, connected with or incidental to this Agreement, and to engage counsel or others in connection therewith;

        (w)     Appoint a placement agent or agents to assist with, among other things, the placement of Interests in the Partnership and communicating with Investor Partners at no additional cost to the Partnership or to the other Partners (other than those Partners investing in the Partnership through a placement agent). Placement agents may be compensated directly by Investor Partners (prior to investment) and/or indirectly by receiving a portion of the fees or other benefits received by the General Partner from the Partnership with respect to Investor Partners introduced to the Partnership by the respective placement agent(s); and

        (x)     Authorize any partner, employee or other agent of the General Partner or agent or employee of the Partnership to act for and on behalf of the Partnership in all matters incidental to the foregoing.

Section 3.02. Duties and Obligations of the General Partner.

        (a)     The General Partner shall take all actions which may be necessary or appropriate (i) for the continuation of the Partnership's valid existence as a limited partnership under the laws of the State of Delaware, and of each other jurisdiction in which such existence is necessary to protect the limited liability of the Limited Partners or to enable the Partnership to conduct the business in which it is engaged and (ii) for the accomplishment of the Partnership's purposes.

        (b)     The General Partner shall be under a duty to conduct the affairs of the Partnership in the best interests of the Partnership and of the Partners, including the safekeeping and use of all of the Partnership's property and the use thereof for the exclusive benefit of the Partnership.

Section 3.03. Exculpation.

        (a)     None of the General Partner or its Affiliates shall be liable to any Limited Partner or the Partnership for mistakes of judgment or for action or inaction which said Person reasonably believed to be in the best interests of the Partnership, or for losses due to such mistakes, action or inaction or to the negligence, dishonesty or bad faith of any employee, broker or other agent of the Partnership;

provided that such employee, broker or agent was selected, engaged or retained by the Partnership with reasonable care. Each of the General Partner and its Affiliates may consult with counsel and/or accountants in respect of Partnership affairs and be fully protected and justified in any action or inaction which is taken in accordance with the advice or opinion of such counsel and/or accountants, provided that they shall have been selected with reasonable care.

(b)     Notwithstanding any of the foregoing to the contrary, the provisions of this Section 3.03 shall not be construed so as to provide for the indemnification of the General Partner or any of its Affiliates for any liability (including liability under Federal securities laws which, under certain circumstances, impose liability even on Persons that act in good faith), to the extent (but only to the extent) that such indemnification would be in violation of applicable law, but shall be construed so as to effectuate the provisions of this Section 3.03 to the fullest extent permitted by law.

Section 3.04. <u>Indemnification of the General Partner.</u>

(a)     To the fullest extent permitted by law, the Partnership shall indemnify and hold harmless the General Partner, its Affiliates and the legal representatives of any of them (an "<u>Indemnified Party</u>"), from and against any loss or expense suffered or sustained by an Indemnified Party by reason of the fact that he, she or it is or was an Indemnified Party, including, without limitation any judgment, settlement, reasonable attorneys' fees and other costs or expenses incurred in connection with the defense of any actual or threatened action or proceeding; provided that such loss or expense resulted from a mistake of judgment on the part of an Indemnified Party, or from action or inaction that said Indemnified Party reasonably believed to be in the best interests of the Partnership or for losses due to the gross negligence, dishonesty or bad faith of the Indemnified Party or any employee, broker or other agent of any Indemnified Party.  The Partnership shall, in the sole discretion of the General Partner, advance to any Indemnified Party reasonable attorneys' fees and other costs and expenses incurred in connection with the defense of any action or proceeding that arises out of such conduct. In the event that such an advance is made by the Partnership, the Indemnified Party shall agree to reimburse the Partnership for such fees, costs and expenses to the extent that it shall be determined that such Indemnified Party was not entitled to indemnification under this Section 3.04.

(b)     Notwithstanding any of the foregoing to the contrary, the provisions of this Section 3.04 shall not be construed so as to provide for the indemnification of the General Partner or any of its Affiliates for any liability (including liability under Federal securities laws which, under certain circumstances, impose liability even on Persons that act in good faith), to the extent (but only to the extent) that such indemnification would be in violation of applicable law, but shall be construed so as to effectuate the provisions of this Section 3.04 to the fullest extent permitted by law.

Section 3.05. <u>Management Fee: Payment of Certain Costs and Expenses.</u>

(a)     The Partnership shall pay to the General Partner a fee for

management services (the "Management Fee") equal, on an annual basis, to approximately 1.5% of the net asset value of each Investor Partner's Capital Account (including Private Placement Investments valued in accordance with Section 4.06), calculated monthly and payable quarterly in advance. Notwithstanding the foregoing, the General Partner may in its absolute discretion, reduce or waive the Management Fee that would otherwise be applicable to the net assets of limited partnership interests attributable to certain Limited Partners.

(b) In consideration for the Management Fee, except as set forth in paragraph (c), the General Partner shall bear the Partnership's administrative expenses.

(c) Administrative and operational expenses of the Partnership resulting from the investment expenses (e.g., expenses which the General Partner reasonably determines to be related to the investment of the Partnership's assets, such as brokerage commissions, expenses relating to short sales, clearing and settlement charges, custodial fees, bank service fees and interest expenses), legal expenses, professional fees (including, without limitation, expenses of consultants and experts) relating to investments, accounting expenses (including the cost of an accounting software package), auditing and tax preparation expenses, organizational expenses, expenses incurred in connection with the offering and sale of the Partnership interests and extraordinary expenses, in each case relating to the Partnership, will be satisfied by the Partnership. Notwithstanding the foregoing, all investment expenses relating specifically to a Memorandum Account or a Private Placement Account shall be charged against the Capital Accounts of the Partners participating in such Memorandum Account or Private Placement Account in proportion to their respective interests therein. If the General Partner appoints sub-advisors in the future, the Partnership will bear the expense of sub-advisory fees (which may be performance or asset based) paid to sub-advisors of the Partnership to the extent such fees exceed commission rebates to the Partnership used to pay sub-advisors.

(d) To the extent that in accordance with paragraphs (b) and (c) above any expense that is allocable to each of the Partnership and the General Partner is paid by the General Partner in excess of its ratable share, the Partnership will reimburse the General Partner for the Partnership's share of such expense.

Section 3.06. Withdrawal, Removal and Termination of General Partner.

(a) Withdrawal of General Partner. The General Partner may withdraw as General Partner of the Partnership without the consent of the other Partners.

(b) Termination of General Partner by Operation of Law. In the event of the bankruptcy, dissolution or other termination of the General Partner by operation of law, the General Partner shall be deemed withdrawn as General Partner hereunder upon the election of a successor pursuant to Section 3.06(c) hereof.

(c) Election of Successor General Partner. Upon the

-14-

withdrawal, removal or other termination of the General Partner pursuant to this Agreement, Investor Partners holding more than 50% of the aggregate Partnership Percentages shall appoint a successor General Partner to serve hereunder by consent. Such successor General Partner shall be required to consent to being bound by the provisions of this Agreement in writing and thereafter shall serve as General Partner in accordance with the terms of this Agreement.

ARTICLE IV

CAPITAL ACCOUNTS OF PARTNERS AND OPERATION THEREOF

Section 4.01. Capital Contributions.

(a)     Each Limited Partner has paid or conveyed by way of an initial contribution to the Partnership (herein called the "Initial Capital Contribution") cash in the amount set forth opposite such Limited Partner's name on a schedule of capital contributions maintained by the General Partner ("Schedule of Capital Contributions"). The Initial Capital Contribution for any Limited Partner shall not be less than $250,000, subject to the discretion of the General Partner to accept a lesser amount.

(b)     With the prior approval of the General Partner, any Limited Partner may make Additional Capital Contributions at the beginning of any calendar month in an amount equal to or greater than $10,000, subject to the discretion of the General Partner to accept lesser amounts and to accept contributions at different times.

(c)     The General Partner may make Capital Contributions at the beginning of any calendar month.

(d)     Capital Contributions shall be made only in accordance with the provisions of this Article IV.

Section 4.02. Capital Accounts. A capital account (herein called the "Capital Account") shall be established initially on the books of the Partnership for each Partner pursuant to Treasury Regulation Section 1.704-1(b). The Capital Account of each Partner shall be in an amount equal to such Partner's Initial Capital Contribution, adjusted as hereinafter provided. At the beginning of each Accounting Period, the Capital Account of each Partner shall be increased by the amount of any Capital Contributions made by such Partner as of the first day of such Accounting Period. At the end of each Accounting Period, the Capital Account of each Partner shall be (i) increased or decreased by the amount credited or debited to the Capital Account of such Partner pursuant to Section 4.04 and (ii) decreased by the amount of any withdrawals made by such Partner pursuant to Section 7.02 or any distributions made to such Partner pursuant to Section 7.01. At the beginning of each Fiscal Quarter, the Capital Account of each Limited Partner shall be decreased by the amount of the Management Fee calculated in respect of such Capital Account pursuant to Section 3.05.

Section 4.03. Private Placement Accounts.

(a)   The Partnership shall maintain a separate Private Placement Account on its books for each Private Placement Investment and any related Follow-Up Investment made by the Partnership, and the Net Private Placement Account Profits and Net Private Placement Account Losses for each Private Placement Account shall be separately calculated and allocated pursuant to Section 4.05.  Only persons who are Partners at the time a Private Placement Account is established shall participate in such Private Placement Account and their respective interests therein shall be in accordance with their respective Partnership Percentages at the time such Private Placement Account is established (such interests referred to hereinafter as a Partner's "interest in the related Private Placement Account").

In the event the Partnership shall make Follow-Up Investments with respect to a Private Placement Account, the participating Partners shall share in such Follow-Up Investments in the proportion of their respective interests in such Private Placement Account; provided, however, that if a Partner shall have retired from the Partnership, the General Partner shall equitably adjust the respective interests of the remaining participating Partners in such Private Placement Account to reflect such Partner's retirement and non-participation in the Follow-Up Investment.

(b)   "Private Placement Investment" shall mean any Investment or Investment Position determined by the General Partner in its sole discretion to be illiquid and lacking a readily assessable market value.

(c)   "Follow-Up Investment" shall mean the acquisition by the Partnership, in an Accounting Period subsequent to an Accounting Period in which a Private Placement Account is established, of additional Private Placement Investments to be held, in the sole discretion of the General Partner, in such Private Placement Account.

Section 4.04. Partnership Percentages. A Partnership Percentage shall be determined for each Partner for each Accounting Period by dividing the amount of each Partner's Capital Account (not including interests in Memorandum Accounts or Private Placement Accounts) by the aggregate Capital Accounts of all Partners (not including interests in Memorandum Accounts or Private Placement Accounts) as of the beginning of such Accounting Period (in each case a "Partnership Percentage"). The sum of the Partnership Percentages shall equal 100%.

Section 4.05. Allocation of Net Capital Appreciation or Net Capital Depreciation.

(a)   At the end of each Accounting Period, subject to the succeeding paragraphs of this Section 4.05, the Capital Account of each Partner (including the General Partner) for such Accounting Period shall be adjusted by crediting (in the case of Net Capital Appreciation) or debiting (in the case of Net Capital Depreciation) the Net Capital Appreciation or Net Capital Depreciation, as the case may be, to the Capital Accounts of all the Partners (including the General Partner) in proportion to their respective Partnership Percentages.

(b)   At the end of each Fiscal Year, 20% of the Net Capital

-16-

Appreciation in respect of an Investor Partner's Capital Account for such Fiscal Year shall be reallocated to the Capital Account of the General Partner (the "Special Allocation"); *provided however*, that the Net Capital Appreciation upon which the calculation of the Special Allocation is based shall be reduced to the extent of any unrecovered balance remaining in the Loss Recovery Account of such Investor Partner as of the date of such determination; and *provided further* that the amount of Special Allocation attributable to any Partner for any Fiscal Year shall be reduced by any amount deducted from such Partner's Capital Account pursuant to the first sentence of paragraph (c). The amount of the unrecovered balance remaining in the Loss Recovery Account at the time of calculating the Special Allocation shall be the amount existing immediately prior to its reduction pursuant to the second clause of the second sentence of paragraph (d) below.

(c)     In the event that an Investor Partner withdraws any amounts from such Investor Partner's Capital Account other than as of the end of a Fiscal Year (or withdraws from the Partnership in accordance with Articles VII or IX hereof), with respect to the period commencing on the date immediately following the end of the prior Fiscal Year and ending on the effective date of such withdrawal, 20% of the pro rata portion of the Net Capital Appreciation for such period shall be retained by the Partnership pending reallocation to the Capital Account of the General Partner as of the end of the current Fiscal Year, and deducted from the amount otherwise payable to such Investor Partner as a result of such withdrawal. Such amount shall be reallocated to the General Partner after determination of the Partnership's annual audited financial statements (subject to any adjustments resulting from the determination of such Partner's actual Capital Account, and related allocations as of the date of such withdrawal, as determined in connection with the preparation of such financial statements). For the purposes of this paragraph (c), the "pro rata" portion of any amount shall be determined by multiplying such amount by a fraction, the numerator of which is the amount of the withdrawal (prior to any deductions) to be made by such Investor Partner and the denominator of which is the balance in such Investor Partner's Capital Account on the date immediately prior to giving effect to such withdrawal.

(d)     There shall be established on the books of the Partnership for each Investor Partner a memorandum account (the "Loss Recovery Account"), the opening balance of which shall be zero. At the end of each Fiscal Year, or at such other date during a Fiscal Year as the calculation of the Special Allocation is required to be made under this Section 4.05 with respect to such Partner, the balance in each Investor Partner's Loss Recovery Account shall be adjusted as follows: first, if there has been Net Capital Depreciation with respect to such Investor Partner since the immediately preceding date as of which a calculation of a Special Allocation was made (or if no calculation has yet been made with respect to such Investor Partner since such Investor Partner's admission to the Partnership), an amount equal to such Net Capital Depreciation shall be debited to such Investor Partner's Loss Recovery Account, and, second, if there has been Net Capital Appreciation with respect to such Investor Partner since the immediately preceding date as of which a calculation of a Special Allocation was made (or if no calculation has yet been made with respect to such Investor Partner since such

-17-

Investor Partner's admission to the Partnership), an amount equal to such Net Capital Appreciation, before any Special Allocation to the General Partner, shall be credited to and reduce any unrecovered balance in such Investor Partner's Loss Recovery Account, but not beyond zero.

(e)     In the event that an Investor Partner with an unrecovered balance in such Investor Partner's Loss Recovery Account withdraws all or a portion of his or her Capital Account, the unrecovered balance in such Investor Partner's Loss Recovery Account shall be reduced as of the beginning of the next Accounting Period by an amount equal to the product obtained by multiplying the balance in such Investor Partner's Loss Recovery Account by a fraction, the numerator of which is the amount of the withdrawal made by such Investor Partner as of the last day of the prior Accounting Period and the denominator of which is the balance in such Investor Partner's Capital Account on the last day of the prior Accounting Period (prior to the withdrawal made by the Investor Partner as of the last day of the Accounting Period). Additional Capital Contributions shall not affect any Investor Partner's Loss Recovery Account.

(f)     In the event that the Partnership is dissolved otherwise than at the end of a Fiscal Year, or the effective date of an Investor Partner's withdrawal is other than Fiscal Year-end, then for purposes of determining the Special Allocation, Net Capital Appreciation shall be determined through the termination or withdrawal date as if such date was the end of the Fiscal Year.

(g)     In the event that prior to the Partnership making an investment, the General Partner determines that, based upon tax or regulatory reasons, or any other reasons as to which the General Partner and any Limited Partner agree, such Limited Partner should not participate in the Net Capital Appreciation or Net Capital Depreciation, if any, attributable to trading in any Security or type of Security or to any other transaction, the General Partner may allocate such Net Capital Appreciation or Net Capital Depreciation only to the Capital Accounts of Limited Partners to whom such reasons do not apply. In addition, if for any of the reasons described above, the General Partner determines that a Limited Partner should have no interest whatsoever in a particular Security, type of Security or transaction, the interests in such Security, type of Security or transaction may be set forth in a separate memorandum, account in which only the Limited Partner having an interest in such Security, type of Security or transaction (any such Limited Partner, for such Security, type of Security or transaction, being referred to as an "Unrestricted Partner") shall have an interest and the Net Capital Appreciation and Net Capital Depreciation for each such memorandum account shall be separately calculated. The General Partner will not be allocated gains or losses attributable to new issues to the extent restricted by the rules of the National Association of Securities Dealers, Inc.

(h)     Notwithstanding the foregoing, for each Private Placement Investment, any Net Private Placement Account Profits or Net Private Placement Account Loss shall be allocated to those Partners participating in such Private Placement Investment in the proportions which (1) each such Partner's Private Placement Account as of the beginning of each Accounting Period bore to (2) the sum of the Private Placement

-18-

Accounts of the Partners participating in such Private Placement Investment as of the beginning of the Accounting Period.

(i)     At the end of each Accounting Period during which a Private Placement Investment Account or a memorandum account created pursuant to paragraph (g) (a "Memorandum Account") was in existence (or during which an interest in particular Securities was otherwise allocated away from one or more Limited Partners), the Capital Account of each Limited Partner with an interest in such Private Placement Investment Account or of each Unrestricted Partner, as the case may be, shall be debited pro rata in accordance with the Private Placement Investment Accounts of such Partners or the Capital Accounts of all Unrestricted Partners, as the case may be, at the opening of such Accounting Period in an amount equal to the interest that would have accrued on the amount used to purchase the Securities attributable to the Private Placement Investment Account or Memorandum Account (the "Purchase Price") had the Purchase Price earned interest at the rate per annum being paid by the Partnership from time to time during the applicable Accounting Period for borrowed funds, or, if funds have not been borrowed by the Partnership during such Accounting Period, at the interest rate per annum that the General Partner determines would have been paid if funds had been borrowed by the Partnership during such Accounting Period. The amount so debited shall then be credited to the Capital Accounts of all of the Limited Partners pro rata in accordance with their Capital Accounts as of the opening of the Accounting Period.

Section 4.06. Regulatory Amendments. In the event that the General Partner becomes subject to such requirements, the General Partner shall have the right to amend, without the consent of the Investor Partners, the terms of this Agreement so that the terms herein provided conform to any applicable requirements of the Securities and Exchange Commission and other regulatory authorities; provided, however, that no such amendment shall increase the Special Allocation as so amended to more than 20% of the excess of the Net Capital Appreciation allocated to any Investor Partner's Capital Account over the Management Fee debited therefrom; and provided, further, that each Investor Partner shall be given written notice and opportunity to withdraw from the Partnership prior to the effectiveness of such amendments.

Section 4.07. Valuation of Assets.

(a)     Securities that are listed on a securities exchange (including such Securities when traded in the after-hours market) shall be valued at their last sales prices on the date of determination on the largest securities exchange on which such Securities shall have traded on such date, or if trading in such Securities on the largest securities exchange on which such Securities shall have traded on such date was reported on the consolidated tape, their last sales prices on the consolidated tape (or, in the event that the date of determination is not a date upon which a securities exchange was open for trading on the last prior date on which such securities exchange was so open not more than 10 days prior to the date of determination). If no such sales of such Securities occurred on either of the foregoing dates, such Securities shall be valued at the "bid" price for long positions and "asked" price for short positions on the largest securities exchange on which such Securities are traded, on the date of determination, or, if "bid" prices for

long positions and "asked" prices for short positions in such Securities on the largest securities exchange on which such Securities shall have traded on such date was reported on the consolidated tape, the "bid" price for long positions and "asked" price for short positions on the consolidated tape (or, if the date of determination is not a date upon which such securities exchange was open for trading, on the last prior date on which such a securities exchange was so open not more than 10 days prior to the date of determination). Securities that are not listed on an exchange but are traded over-the-counter shall be valued at representative "bid" quotations if held long by the Partnership and representative "asked" quotations if held short by the Partnership, unless included in the NASDAQ National Market System, in which case they shall be valued based upon their last sales prices (if such prices are available); provided that, if the last sales price of a Security does not fall between the last "bid" and "asked" price for such Security on such date, then the General Partner shall value such Security at the mean between the last "bid" and "asked" price for such Security on such date. Options that are listed on a securities exchange shall be valued at their last sales prices on the date of determination on the largest securities exchange on which such options shall have traded on such date; provided that, if the last sales prices of such options do not fall between the last "bid" and "asked" prices for such options on such date, then the General Partner shall value such options at the mean between the last "bid" and "asked" prices for such options on such date.

(b)     The General Partner shall value each Private Placement Investment at fair value, determined at the time such Private Placement Investment (including any Follow-Up Investment) is attributed to a Private Placement Account, and, except as otherwise provided in this Section 4.07(b), such value shall not be changed until such Private Placement Investment is sold or otherwise liquidated. "Net Private Placement Account Profit" or "Net Private Placement Account Loss" with respect to any Private Placement Account for any Accounting Period shall include only realized gains and losses such that such Profits and Losses and, at the time of such realization, shall equal the difference between the value of such Private Placement Investment at the time initially attributed to such Private Placement Account and the amount the Partnership receives in exchange therefor in the event of a sale or other liquidation of such Investment; provided, however, that in the event that the General Partner determines that the value of such Private Placement Investment may reasonably be determined in accordance with the provisions of Section 4.07(a), such Profits and Losses shall be equal to the difference between the value of such Investment at the beginning of the Accounting Period and the value of such Investment at the end of the Accounting Period and Partnership Net Value shall be appropriately adjusted to reflect such change in valuation methodology.

(c)     Except as provided in Section 4.07(b), securities for which no such market prices are available shall be valued at such fair value as the General Partner may reasonably determine.

(d)     Except as provided in Section 4.07(b), all other assets of the Partnership (except goodwill, which shall not be taken into account) shall be assigned

-20-

such fair value as the General Partner may reasonably determine.

(e)     If the General Partner determines that the valuation of any Securities or other property pursuant to paragraph (a) above does not fairly represent market value, the General Partner shall value such Securities or other property as it reasonably determines to be the fair value of such Securities and shall set forth the basis of such valuation in writing in the Partnership's records.

(f)     All values assigned to Securities and other assets by the General Partner pursuant to this Section 4.07 shall be final and conclusive as to all of the Partners.

Section 4.08. <u>Liabilities</u>. Liabilities shall be determined in accordance with generally accepted accounting principles, applied on a consistent basis; provided, however, that the General Partner in its discretion may provide reserves for estimated accrued expenses, liabilities or contingencies, including general reserves for unspecified contingencies, not otherwise required by generally accepted accounting principles.

Section 4.09. <u>Allocation for Tax Purposes</u>.

(a)     For each Fiscal Year, items of income, deduction, gain, loss or credit shall be allocated for income tax purposes among the Partners in such manner as to reflect equitably amounts credited or debited to each Partner's Capital Account for the current and prior Fiscal Years (or relevant portions thereof). Allocations under this Section 4.08 shall be made pursuant to the principles of Sections 704(b) and 704(c) of the Code, and in conformity with Regulations Sections 1.704-l(b)(2)(iv)(f), 1.704-l(b)(4)(i) and 1.704-3(e) promulgated thereunder, as applicable, or the successor provisions to such Section and Regulations. Notwithstanding anything to the contrary in this Agreement, there shall be allocated to the Partners such gains or income as shall be necessary to satisfy the "qualified income offset" requirement of Regulations Section 1.704-l(b)(2)(ii)(d).

(b)     If the Partnership realizes gains for Federal income tax purposes for any Fiscal Year as of the end of which one or more Positive Basis Partners withdraw from the Partnership pursuant to this Agreement, the General Partner may elect to allocate such gains as follows: (i) to allocate such gains among such Positive Basis Partners, pro rata in proportion to the respective Positive Basis of each such Positive Basis Partner, until either the full amount of such gains shall have been so allocated or the Positive Basis of each such Positive Basis Partner shall have been eliminated and (ii) to allocate any gains not so allocated to Positive Basis Partners to the other Partners in such manner as shall equitably reflect the amounts credited to such Partners' Capital Accounts pursuant to Section 4.04.

(c)     As used herein, (i) the term "<u>Positive Basis</u>" shall mean, with respect to any Partner and as of any time of calculation, the amount by which his, her or its interest in the Partnership as of such time exceeds its "adjusted tax basis," for Federal income tax purposes, in his, her or its interest in the Partnership as of such time

(determined without regard to any adjustments made to such "adjusted tax basis" by reason of any transfer or assignment of such interest, including by reason of death) and (ii) the term "Positive Basis Partner" shall mean any Partner who withdraws from the Partnership and who has Positive Basis as of the effective date of his, her or its withdrawal, but such Partner shall cease to be a Positive Basis Partner at such time as he, she or it shall have received. allocations pursuant to clause (i) of the preceding sentence equal to his, her or its Positive Basis as of the effective date of its withdrawal.

Section 4.10. <u>Determination by General Partner of Certain Matters: General Partner Discretion</u>. All matters concerning the valuation of Securities and other assets of the Partnership, the allocation of profits, gains and losses among the Partners, including taxes thereon, and accounting procedures not expressly provided for by the terms of this Agreement shall be determined by the General Partner, whose determination shall be final and conclusive as to all of the Partners. Whenever in this Agreement the General Partner is permitted or required to make a decision (i) in its "sole discretion" or "discretion," or under a similar grant of authority or latitude, the General Partner shall be entitled to consider only such interests and factors as it desires and may consider its own interests and the interests of its Affiliates, and shall have no duty or obligation to give any consideration to any interest of or factors affecting the Partnership or the Limited Partners or (ii) in its "good faith" or under another express standard, the General Partner shall act under such express standards and shall not be subject to any other or different standards imposed by this Agreement or by law or any other agreement contemplated herein. Each Limited Partner hereby agrees that any standard of care or duty imposed in this Agreement or any other agreement contemplated herein or under the Act or any other applicable law, rule or regulation shall be modified, waived or limited in each case as required to permit the General Partner to act under this Agreement or any other agreement contemplated herein and to make any decision pursuant to the authority prescribed in this Agreement so long as such action or decision does not constitute willful misconduct and is reasonably believed by the General Partner to be consistent with the overall purpose of the Partnership.

Section 4.11. <u>Adjustments to Take Account of Interim Year Events</u>. If the Code or regulations promulgated thereunder require a withholding or other adjustment to the Capital Account of a Partner or some other interim year event occurs necessitating in the General Partner's judgment an equitable adjustment, the General Partner shall make such adjustments in the determination and allocation among the Partners of Net Capital Appreciation, Net Capital Depreciation, Capital Accounts, Partnership Percentages, Special Allocation, Management Fee, items of income, deduction, gain, loss, credit or withholding for tax purposes, accounting procedures or such other financial or tax items as shall equitably take into account such interim year event and applicable provisions of law, and the determination thereof by the General Partner shall be final and conclusive as to all of the Partners.

ARTICLE V

ROLE OF PARTNERS

-22-

Section 5.01. <u>Rights or Powers</u>. The Limited Partners, in their capacities as Partners of the Partnership, hereby agree not to exercise any right or power to take part in the management or control of the Partnership or its business and affairs or to act for or bind the Partnership in any way. Notwithstanding the foregoing, the Limited Partners have all of the rights and powers specifically set forth in this Agreement and, to the extent not inconsistent with this Agreement, in the Act.

Section 5.02. <u>Voting Rights</u>. No Limited Partner has any voting right except with respect to those matters specifically reserved for a Limited Partner vote which are set forth in this Agreement and as required in the Act.

Section 5.03. <u>Withdrawal/Resignation</u>. Except as otherwise provided in Sections 7.02, 9.01 and 9.02 hereof, no Limited Partner shall demand or receive a return on such Limited Partner's capital contributions or withdraw or resign from the Partnership. If any Partner resigns or withdraws from the Partnership in breach of this Section 5.03, such resigning or withdrawing Partner shall not be entitled to receive any distribution under this Agreement. Under circumstances requiring a return of any capital contributions, no Partner has the right to receive property other than cash except as may be specifically provided herein.

Section 5.04. <u>Partner Compensation</u>. No Limited Partner shall receive any interest or drawing with respect to such Limited Partner's Capital Contributions or its Capital Account or for services rendered on behalf of the Partnership, or otherwise, in such Limited Partner's capacity as a Partner, except as otherwise provided in this Agreement.

Section 5.05. <u>Partner Liability</u>.

(a)     The General Partner shall have the liability for the debts and obligations of the Partnership as a general partner of a partnership formed under the Act.

(b)     No Limited Partner shall be liable under a judgment, decree or order of a court, or in any other manner for the debts or any other obligations or liabilities of the Partnership. A Limited Partner shall be liable only to make such Limited Partner's Capital Contributions and shall not be required to restore a deficit balance in such Limited Partner's Capital Account or to lend any funds to the Partnership or, after such Limited Partner's Capital Contributions have been made, to make any additional contributions, assessments or payments to the Partnership; provided that a Limited Partner may be required to repay distributions made to it as provided in Section 17-607 of the Act subject to Section 7.02 hereof.

(c)     The names of all of the Partners and the amounts of their respective Capital Contributions are set forth in the Schedule of Capital Contributions which shall be filed with the records of the Partnership at the Partnership's principal office.

(d)     Notwithstanding any other provision in this Agreement, in no event shall any Limited Partner (or former Limited Partner) be obligated to make any

additional contribution whatsoever to the Partnership, or have any liability for the repayment and discharge of the debts and obligations of the Partnership (apart from his, her or its interest in the Partnership), except that a Limited Partner (or former Limited Partner) may be required, for purposes of meeting such Limited Partner's obligations under this Section 5.05, to make additional contributions or payments, respectively, up to, but in no event in excess of, the aggregate amount of returns of capital and other amounts actually received by it from the Partnership during, or after the Fiscal Year to which any debt or obligation is attributable.

Section 5.06. Partition. During the term of the Partnership, each Partner agrees not to have any Partnership property partitioned or file a complaint or institute any suit, action or proceeding at law or in equity to have any Partnership property partitioned, and each Partner, on behalf of itself, its successors and its assigns hereby waives any such right.

## ARTICLE VI

### POWER OF ATTORNEY

Section 6.01. General Partner as Attorney-In-Fact.

(a)     Appointment. Each Limited Partner hereby makes, constitutes, and appoints the General Partner, with full power of substitution and re-substitution, such Limited Partner's true and lawful attorney-in-fact and in such Limited Partner's name, place, and stead and for such Limited Partner's use and benefit, to sign, execute, certify, acknowledge, swear to, file, publish and record (i) all Certificates, amended name or similar certificates, and other certificates and instruments (including counterparts of this Agreement) which the General Partner may deem necessary to be filed by the Partnership under the laws of the State of Delaware or any other jurisdiction in which the Partnership is doing or intends to do business; (ii) any and all amendments, restatements or changes to this Agreement and the instruments described in clause (i), as now or hereafter amended, which the General Partner may deem necessary to effect a change or modification of the Partnership in accordance with the terms of this Agreement, including, without limitation, amendments, restatements or changes to reflect (A) the exercise by the General Partner of any power granted to it under this Agreement, (B) the admission of any substituted Limited Partner, and (C) the disposition by any Limited Partner of its interest in the Partnership; (iii) all Certificates of Cancellation and other instruments which the liquidator of the Partnership deems necessary or appropriate to effect the dissolution and termination of the Partnership pursuant to the terms of this Agreement; and (iv) any other instrument which is now or may hereafter be required by law to be filed on behalf of the Partnership or is deemed necessary by the General Partner to carry out fully the provisions of this Agreement in accordance with its terms. Each Limited Partner authorizes the attorney-in-fact to take any further action which such attorney-in-fact shall consider necessary in connection with any of the foregoing, hereby

giving such attorney-in-fact full power and authority to do and perform each and every act or thing whatsoever requisite to be done in connection with the foregoing as fully as such Limited Partner might or could do personally, and hereby ratify and confirm all that any such attorney-in-fact shall lawfully do, or cause to be done, by virtue thereof or hereof.

(b)     Form of Signature. To the extent the laws of any jurisdiction in which the Partnership engages in business require that a Limited Partner sign, execute, certify, acknowledge, swear to, file or record a certificate or other document, such certificate or other document shall be executed in the form set forth below:

_____, Limited Partner

By: Hawk Management, LP,
attorney-in-fact under Power of Attorney

By: HWC LLC,
its General Partner

By:_____
Name:_____
Title:_____

Section 6.02. Nature of Special Power. The power of attorney granted to the General Partner pursuant to this Article VI:

(a)     Is a special power of attorney coupled with an interest and is irrevocable;

(b)     May be exercised by the attorney-in-fact by listing the Limited Partners executing any agreement, certificate, instrument or other document with the single signature of any such attorney-in-fact acting as attorney-in-fact for such Limited Partners; and

(c)     Shall survive and not be affected by the subsequent bankruptcy, insolvency, dissolution or cessation of existence of a Limited Partner and shall survive the delivery of an assignment by a Limited Partner of the whole or a portion of such Limited Partner's interest in the Partnership (except that where the assignment is of such Limited Partner's entire interest and the assignee, with the consent of the other Limited Partners, is admitted as a substituted Limited Partner, the power of attorney shall survive the delivery of such assignment for the sole purpose of enabling any such attorney-in-fact to effect such substitution) and shall extend to such Partner's or assignee's successors and assigns.

ARTICLE VII

VOLUNTARY WITHDRAWALS; DISTRIBUTIONS OF CAPITAL

Section 7.01. <u>Withdrawals and Distributions in General.</u>

(a)     No Partner shall be entitled to receive amounts from the Partnership, except as provided in Sections 7.02, 9.01, 9.02 and 10.02; or upon the consent of, and upon such terms as may be determined by, the General Partner in its sole discretion.

(b)     The General Partner may make distributions to all Limited Partners in proportion to their respective Partnership Percentages, or otherwise as consistent with this Agreement, at such times and in such amounts and form as the General Partner in its sole discretion shall determine. Notwithstanding any other provision of this Agreement, the General Partner shall not have the right or power to make a distribution if it would have the effect of rendering the Partnership insolvent or would cause any Partner to have a negative Capital Account balance.

Section 7.02. <u>Voluntary Withdrawals.</u>

(a)     Subject to paragraphs (c) and (d) below, each Partner shall have the right as of the last Business Day of each Fiscal Quarter, upon 30 days' prior written notice to the General Partner, to (i) withdraw any amount from such Limited Partner's Capital Account (not including such Partner's interest, if any, in any Private Placement Account) or (ii) voluntarily withdraw from the Partnership, and thereby withdraw all amounts from such Limited Partner's Capital Account (not including such Partner's interest, if any, in any Private Placement Account). The General Partner shall have the power to permit any Limited Partner to withdraw from the Partnership, or otherwise withdraw amounts from such Limited Partner's Capital Account at any other time (with or without notice), in its sole discretion and the Limited Partners hereby acknowledge that the General Partner shall not have any obligation to exercise such power for the benefit of any Limited Partner. The General Partner in its discretion may require the complete withdrawal of any Limited Partner who elects to make a partial withdrawal of his or her capital if as a result of, or prior to, such withdrawal the Limited Partner's Capital Account would be less than $250,000. Payment of any amount withdrawn at the end of any Fiscal Quarter pursuant to this Section 7.02 shall be made within 30 days after the end of such Fiscal Quarter; provided, however, that the General Partner may establish a reserve of approximately 10% of the proceeds of the withdrawal until completion of the Partnership's annual audited financial statements. No interest shall be payable on such reserve. Such balance shall be paid within 30 days after completion of the Partnership's annual audited financial statements (subject to any adjustments resulting from the determination of such Partner's actual Capital Account, and related allocations, as of the date of such withdrawal, as determined in connection with the preparation of such financial statements).

(b)     With respect to the Capital Account of any foreign Limited Partner, and notwithstanding any provision of this Agreement to the contrary, the General Partner shall withhold and pay over to the Internal Revenue Service, pursuant to Sections 1441, 1442, 1445 or 1446 of the Code, any successor provisions or any other provision as may be enacted into law, at such times as required by such provisions, such amounts as

-26-

the Partnership is required to withhold under such provisions, as from time to time in effect, on account of such foreign Limited Partner's distributive share of the Partnership's items of gross income, income or gain that are subject to withholding tax pursuant to such provisions. To the extent that a foreign Limited Partner claims to be entitled to a reduced rate of, or exemption from, U.S. withholding tax pursuant to an applicable income tax treaty, or otherwise, the foreign Limited Partner shall furnish the General Partner with such information and forms as it may require and are necessary to comply with the regulations governing the obligations of withholding tax agents. Each foreign Limited Partner represents and warrants that any such information and forms furnished by such Limited Partner shall be true and accurate and agrees to indemnify the Partnership and each of the Partners from any and all damages, costs and expenses resulting form the filing of inaccurate or incomplete information or forms relating to such withholdings taxes.

(c)     Any withdrawal by an Investor Partner, pursuant to paragraph (a) above shall be subject to reallocation to the Partnership as follows:

(i)     If such withdrawal occurs prior to the first anniversary of the Limited Partner's admission to the Partnership (the "Admission Date"), 5% of the amount of such withdrawal shall be reallocated to the Partnership;

(ii)     If such withdrawal occurs on or after the first anniversary of the Admission Date but prior to the second anniversary of the Admission Date, 3% of the amount of such withdrawal shall be reallocated to the Partnership; and

(iii)     If such withdrawal occurs on or after the second anniversary of the Admission Date, none of such withdrawal shall be allocated to the Partnership pursuant to this paragraph (c).

For the purpose of calculating the foregoing periods the General Partner shall include any period prior to the date of admission to the Partnership of such Limited Partner, to the extent that immediately prior to such Limited Partner's admission to the Partnership, the General Partner was providing investment advisory services to such person on a continuous basis.  Notwithstanding Sections (c)(i) and (c)(ii) of this Section 7.02, the General Partner shall have the right, in its sole discretion, to reduce or waive any such redemption fees.

(d)     Notwithstanding any other provision of this Agreement, the General Partner shall have the right as of the end of each Accounting Period to withdraw any amount from its Capital Account.

(e)     Voluntary withdrawals by any Limited Partner shall not cause the termination, liquidation or dissolution of the Partnership.

## ARTICLE VII

### ADMISSION OF NEW PARTNERS

Section 8.01. New Partners. The General Partner may upon its sole option admit one or more new Limited Partners as of the beginning of any calendar month.  Unless otherwise determined by the General Partner in its sole discretion, the minimum amount of any new Limited Partner's Initial Capital Contribution shall be $250,000, and any capital contributed in excess of such amount shall be contributed in $10,000 increments. Each new Limited Partner shall execute a Subscription Agreement pursuant to which it shall agree to be bound by the terms and provisions of this Agreement and which shall contain such other terms as the General Partner may require. Admission of a new Limited Partner shall not be a cause for dissolution of the Partnership.

## ARTICLE IX

### INVOLUNTARY WITHDRAWALS

Section 9.01. Death, etc. of Limited Partner.

(a)     Withdrawal of a Limited Partner shall occur upon his or her death, legal incapacity, bankruptcy or (in the case of Limited Partners other than natural persons) its liquidation or dissolution. The involuntary withdrawal, death, legal incapacity, bankruptcy, liquidation or dissolution of a Limited Partner shall not dissolve the Partnership.

(b)     In the event of death, legal incapacity, bankruptcy, liquidation or dissolution of a Limited Partner, the Limited Partner shall be deemed to have withdrawn from the Partnership on the date of death or the date of unappealable determination of the legal incapacity, bankruptcy, liquidation or dissolution of such Limited Partner.

Section 9.02. Required Withdrawals. The General Partner may terminate the interest of any Limited Partner in the Partnership upon at least 5 days' prior notice to such Limited Partner. Such notice of termination shall have the same effect as a notice of withdrawal by such Limited Partner pursuant to Section 7.02. In addition, the General Partner may terminate the interest of any Limited Partner in the Partnership at any time without notice if the General Partner in its sole discretion deems it appropriate to do so in order to comply with applicable law, to limit the number of Partners to fewer than 100 or to prevent the assets of the Partnership from being deemed "plan assets" under ERISA.

Section 9.03. Payment of Withdrawals. Upon the effectiveness of any withdrawal by a Limited Partner pursuant to this Article IX, the Partnership shall pay such Limited Partner (or such Limited Partner's executors, administrators, estate, heirs, legal representatives and successors and permitted assigns) 90% of such Limited Partner's estimated Capital Account (not including such Partner's interest, if any, in any Private Placement Account) (computed on the basis of unaudited data) within 30 days after the effective date of such withdrawal, and such balance shall be paid (subject to audit

adjustments) within 30 days after completion of the Partnership's annual audited financial statements (subject to any adjustments resulting from the determination of such Partner's actual Capital Account, and related allocations, as of the effective date of such withdrawal, as determined in connection with the preparation of such financial statements). The General Partner may, in its sole discretion, determine that in lieu of such Limited Partner retaining his interests, if any, in any Private Placement Accounts, such Partner may receive the fair value (as determined by the General Partner in its sole discretion) of his interests in the Private Placement Accounts as of the effective date of his withdrawal and in the manner payment is received with respect to the remainder of his Capital Account.

## ARTICLE X

## DURATION AND TERMINATION OF THE PARTNERSHIP

Section 10.01. <u>Duration</u>.

(a)     The Partnership shall remain in existence until terminated pursuant to paragraph (b) below.

(b)     The General Partner, upon 60 days' prior notice to all of the Limited Partners, may at any time in its sole discretion and in all events upon the bankruptcy, liquidation or dissolution of the General Partner, shall dissolve the Partnership, and thereupon the General Partner, or one or more Persons selected by those Investor Partners whose Partnership Percentages exceed in the aggregate 50%, shall wind up the affairs of the Partnership and discharge the functions of the General Partner in accordance with Section 10.02.

Section 10.02. <u>Termination</u>. On the date of termination of the business of the Partnership, the then current Fiscal Quarter and Fiscal Year shall end and within no more than 30 days after completion of a final audit of the Partnership's financial statements (which shall be performed within 90 days of such termination) the General Partner shall, out of the Partnership assets, make distributions in the following manner and order:

(a)     First, to payment and discharge of the claims of all creditors of the Partnership who are not Partners;

(b)     Second, if any, to payment and discharge pro rata of the claims of all creditors of the Partnership who are Partners;

(c)     Third, if any, to the establishment of any reserves it deems necessary; provided that if and when the need therefor shall cease, the monies, if any, then in the particular reserve shall be distributed as provided by subsection (d) of this Section 10.02; and

(d)     The balance, if any, to the Partners in proportion to their Capital Accounts as of the end of the Fiscal Year.

Section 10.03. <u>Method of Distributions</u>. Distributions made pursuant to

subsections (a) and (b) of Section 10.02 shall be made in cash to the extent practicable, and the balance in Securities as the General Partner shall determine. All other distributions made pursuant to this Agreement shall be made in cash or Securities, marked to market and distributed based upon such value, or both, as the General Partner may determine.

## ARTICLE XI

### TAX RETURNS; REPORTS TO PARTNERS

Section 11.01. <u>Independent Auditors</u>. The financial statements of the Partnership shall be audited by an independent certified public accountant selected by the General Partner as of the end of each Fiscal Year.

Section 11.02. <u>Filing of Tax Returns</u>. The General Partner shall prepare and file, or cause the accountants of the Partnership to prepare and file, a Federal information tax return in compliance with Section 6031 of the Code, and any required state and local income tax and information returns for each tax year of the Partnership.

Section 11.03. <u>Tax Matters</u>. The General Partner shall be designated on the Partnership's annual Federal information tax return, and have full powers and responsibilities, as the "Tax Matters Partner" of the Partnership for purposes of the Code. The Partnership is intended to be treated as a partnership for United States federal income tax purposes in a manner consistent with Treasury Regulations Section 1-7701, and the Tax Matters Partner shall undertake such actions as may be necessary or appropriate to effect such election. Each Person (for purposes of this Section 11.03, referred to as a "Pass-Through Partner") that holds or controls an interest as a Limited Partner on behalf of, or for the benefit of, another Person or Persons, or which Pass-Through Partner is beneficially owned (directly or indirectly) by another Person or Persons shall, within 30 days following receipt from the Tax Matters Partner of any notice, demand, request for information or similar document, convey such notice or other document in writing to all holders of beneficial interests in the Partnership holding such interests through such Pass-Through Partner. In the event the Partnership shall be the subject of an income tax audit by any Federal, state or local authority, to the extent the Partnership is treated as an entity for purposes of such audit, including administrative settlement and judicial review, the Tax Matters Partner shall be authorized to act for, and its decision shall be final and binding upon, the Partnership and each Partner thereof. All expenses incurred in connection with any such audit, investigation, settlement or review shall be borne by the Partnership.

Section 11.04. <u>Reports to Current Partners</u>.

(a)      Within 90 days after the end of each Fiscal Year or as soon thereafter as is reasonably possible, the Partnership shall prepare and mail to each Partner, together with the report thereon of the accountants selected by the General Partner, an audited financial report setting forth as of the end of such Fiscal Year:

(i)      a balance sheet of the Partnership;

(ii)   a statement showing the Net Capital Appreciation or Net Capital Depreciation as the case may be, for such year;

(iii)   a statement showing the Fund's investment positions, as is required by generally accepted accounting principles;

(iv)   such Partner's Capital Account as of the end of such year; and

(v)   such Partner's Partnership Percentage as of the end of such year.

(b)   The Partnership will also provide periodic unaudited performance information, no less frequently than quarterly, to the Limited Partners, in such form and detail as the General Partner shall determine.

Section 11.05. Tax Reports. Within 90 days of the end of each Fiscal Year or as soon thereafter as is reasonably possible, the Partnership shall prepare and mail, or cause its accountants to prepare and mail, to each Partner and, to the extent necessary, to each former Partner (or its legal representatives), a report setting forth in sufficient detail such information as shall enable such Partner or former Partner (or such Partner's legal representatives) to prepare their respective Federal income tax returns in accordance with the laws, rules and regulations then prevailing.

## ARTICLE XII

Section 12.01. Miscellaneous.

Section 12.02. General. This Agreement shall be binding on the executors, administrators, estates, heirs, legal representatives, successors and permitted assigns of the Partners and may be executed in several counterparts (including, in the case of the Partners, by execution of the Subscription Agreement) with the same effect as if the parties executing the several counterparts had all executed one counterpart; provided, however, that the several counterparts, in the aggregate, shall have been signed by all of the Partners. Nothing in this Agreement shall provide any benefit to any third party or entitle any third party to any claim, cause of action, remedy or right of any kind, other than Indemnified Party under Section 3.04 hereof, it being the intent of the parties that this Agreement shall not be construed as a third-party beneficiary contract, except with respect to indemnification under Section 3.04.

Section 12.03. Choice of Law. Notwithstanding the place where this Agreement may be executed by any of the parties hereto, the parties expressly agree that all the terms and provisions hereof shall be construed under the laws of the State of Delaware without regard to conflicts of law principles, and, without limitation thereof, that the Act as now adopted or as may hereafter be amended shall govern the limited liability aspects of this Agreement,

Section 12.04. <u>Notices</u>. Each notice relating to this Agreement shall be in writing and delivered in person or by registered or certified mail, by nationally recognized overnight delivery service, by facsimile, or by electronic mail. A notice sent via facsimile or electronic mail shall not be deemed to have been received until a receipt confirmation sent by the recipient is received by the sender. All notices to the Partnership shall be addressed to Hawk Opportunity Fund L.P., c/o Hawk Management L.P., 159 North State Street, Newtown, Pennsylvania 18940, with copy to Kirkpatrick & Lockhart Nicholson Graham LLP, 75 State Street, Boston, Massachusetts 02109 Attention: Rebecca O'Brien Radford. All notices addressed to a Limited Partner shall be addressed to such Limited Partner at the address on the records of the General Partner. Any Limited Partner may designate an address by notice to the General Partner or pursuant to the Subscription Agreement giving effect to such Limited Partner's Initial Capital Contribution. Unless otherwise specifically provided in this Agreement, a notice shall be deemed to have been effectively given to the General Partner when received by the General Partner and to have been effectively given to a Limited Partner when delivered in person, on the fifth Business Day after the same shall have been mailed by registered or certified mail to the proper address as provided by this Section 12.04 or on the first Business Day after having been sent next day delivery by nationally recognized overnight delivery service, by facsimile or by electronic mail.

Section 12.05. <u>Amendments</u>. The terms and provisions of this Agreement may be modified or amended at any time and from time to time with the written consent of Investor Partners having in excess of 50% of the Partnership Percentages and the affirmative vote of the General Partner insofar as is consistent with the laws governing this Agreement; provided, however, that in addition to its right to make amendments in accordance with Section 4.05, the General Partner may amend, without the consent of the Investor Partners, the Agreement or the Schedule of Capital Contributions to (i) reflect changes validly made in the membership of the Partnership and the Capital Contributions and Partnership Percentages of the Partners; (ii) reflect a change in the name of the Partnership; (iii) make a change that is necessary or, in the opinion of the General Partner advisable to qualify the Partnership as a limited partnership in which the Partners have limited liability under the laws of any state or foreign jurisdiction, or ensure that the Partnership will not be treated as a publicly traded partnership, an association or a publicly traded partnership taxable as a corporation for Federal income tax purposes; (iv) make a change that does not adversely affect the Limited Partners in any material respect; (v) make a change that is necessary or desirable to cure any ambiguity, to correct or supplement any provision in this Agreement that would be inconsistent with any other provision in this Agreement, or to make any other provision with respect to matters or questions arising under this Agreement not be inconsistent with the provisions of this Agreement, in each case so long as such change does not adversely affect the Limited Partners in any material respect; (vi) make a change that is required or contemplated by this Agreement; (vii) make a change in any provision of this Agreement that requires any action to be taken by or on behalf of the General Partner or the Partnership pursuant to applicable Delaware law if the provisions of applicable Delaware law are amended, modified or revoked so that the taking of such action is no longer required; (viii) prevent the Partnership from in any manner being deemed a non-exempted "Investment

Company" and thereby become subject to the provisions of the Investment Company Act of 1940, as amended in their entirety; or (ix) make any other amendments similar to the foregoing; provided that all Limited Partners shall receive notice of any amendment adopted by the Partnership. Notwithstanding the foregoing, no amendment shall be permissible if it is discriminatorily adverse to any Partner, unless consented to by such Partner (whether or not such Partner would otherwise have the right to consent to such amendment pursuant to the other provisions of this Agreement).

Section 12.06. <u>Adjustment of Basis of Partnership Property</u>. In the event of a distribution of Partnership property to a Partner or an assignment or other transfer (including by reason of death) of all or part of the interest of a Limited Partner in the Partnership, at the request of a Partner, the General Partner, in its discretion, may cause the Partnership to elect, pursuant to Section 754 of the Code, or the corresponding provision of subsequent law, to adjust the basis of the Partnership property as provided by Sections 734 and 743 of the Code.

Section 12.07. <u>Goodwill</u>. No value shall be placed on the name, logo or goodwill of the Partnership, which shall belong exclusively to the General Partner.

Section 12.08. <u>Headings</u>. The titles of the Articles and the headings of the Sections of this Agreement are for convenience of reference only and are not to be considered in construing the terms and provisions of this Agreement.

Section 12.09. <u>Pronouns</u>. All pronouns shall be deemed to refer to the masculine, feminine, neuter, singular or plural, as the identity of the person or persons, firm or corporation may require in the context thereof.

Section 12.10. <u>Severability</u>. In the event that any provision of this Agreement shall be held to be void or unenforceable for any reason whatsoever, the remaining provisions of this Agreement shall not be affected thereby and shall continue in full force and effect.

IN WITNESS THEREOF, the Partners have hereunto set their hands and seals as of the year and date first above written.

General Partner:

HAWK MANAGEMENT L.P.

By: HWC LLC, its General Partner

By: _____

       Name:  Edgar Jay House
       Title:  Manager